SAMUEL M. BROWN, trustee, *vs.* NEW BEDFORD INSTITUTION FOR SAVINGS.

Bristol.    October 24, 1883. — June 27, 1884.

A savings bank has no lien upon the surplus proceeds of the sale of stock, held as collateral security for the payment of a promissory note, for the general balance due from the maker of the note.

A. made an assignment of his property to a trustee for the benefit of his creditors, by which the creditors released their claims except as therein provided; and which provided that no creditor holding security should, by signing, release, impair, or in any manner affect his right to such security, but that, if the security would be applicable to A.'s liability under the insolvent laws of the Commonwealth in insolvency, the dividends should be paid only on so much of the debt as should remain after deducting from it the amount realized from the sale of the security; and that the trustee might pay off liens on the property. A. had previously given to a bank a promissory note, payable on demand, and secured by a transfer of shares of stock; and the bank made other advances to A. before and after this transaction, receiving other notes, which it still holds. Demand was made on the note secured three days before the date of the assignment, but no notice of intention to sell the security was given; and the bank afterwards became a party to the assignment. Subsequently the bank sold the stock held as security, the trustee and A. waiving the sixty days' notice mentioned in the Gen. Sts. *c.* 151, § 9, and consenting to the sale; and the proceeds of the sale were more than sufficient to pay the note. *Held*, that the trustee could recover such surplus in an action against the bank.

HOLMES, J.    The plaintiff is trustee under an assignment for the benefit of creditors made by one Philip D. Borden. He seeks to recover the proceeds of stock transferred by Borden to the defendant to secure a note, so far as they are not necessary to pay that note. The defendant claims the right to hold them for a general balance due from Borden.

The note and security were given on August 28, 1877, and the defendant made other advances before and after that date, receiving other notes which it still holds. The note secured was payable on demand. Demand was made on February 3, 1880, but no notice of intention to sell the security was given.

On February 6, 1880, the assignment was made by Borden to the plaintiff, and, before March 1, the defendant became a party to it. By that instrument, the creditors released their claims except as therein provided. See *Dickinson* v. *Metacomet National Bank*, 130 Mass. 132. It was provided that no one holding security should, by signing, release, impair, or in any manner affect his right to such security, but that, if the. security would be applicable to Borden's liability under the insolvent laws of Massachusetts in insolvency, the dividends should be paid only on so much of the debt as should remain after deducting from it the amount realized from the sale of the security. It was also provided that the trustee, with the approval of an advisory board, might pay off liens, and agree upon the valuation at which creditors might take any security held by them, or upon the time, place, and mode of sale of such securities.

Subsequently the defendant sold the stock, the plaintiff and Borden waiving the sixty days' notice, assumed by all parties to be necessary unless waived, (Gen. Sts. *c.* 151, § 9; Pub. Sts. *c.* 192, § 10,) and consenting to the sale.

If the defendant is to prevail, it must do so either by force of the terms of the assignment, or else by establishing a general lien. The latter branch of the alternative may be disposed of very shortly. In this State, at least, the English decisions which adopted a custom of merchants giving bankers a lien for their general balance (*Brandao* v. *Barnett*, 12 Cl. & Fin. 787; *S. C.* 6 M. & Gr. 630; *In re European Bank*, L. R. 8 Ch. 41) would not be applied to the case of a savings bank taking security for a specific note, as here, and indeed the contrary was not argued to us. *Hathaway* v. *Fall River National Bank*, 131 Mass. 14. See *Vanderzee* v. *Willis*, 3 Bro. C. C. 21. The somewhat analogous doctrine of the consolidation of securities does. not exist here at all.

A majority of the court are of opinion that the defendant's case is no better under the assignment. The plaintiff became

the owner of the stock, subject only to a specific charge, before any right of set-off had accrued to the defendant. Hence the defendant must found its claim upon some stipulation cutting down the rights which the plaintiff would otherwise have acquired by the assignment. But although the right of set-off is to be liberally construed under circumstances like the present, and although we have looked somewhat anxiously for expressions upon which it could be claimed, we do not find them in the instrument.

The provision that the assignment shall not in any manner affect creditors' rights to their security preserves their rights to it for the purposes for which it was given, but is not addressed to the rights which they might have had, if there had been no assignment, in respect of proceeds not necessary to pay the secured debt, supposing the security to have been sold with the debtor's assent. Such a surplus evidently is not expected or provided for.

The strongest position for the defendant is, that the deed contemplates that the estate shall be wound up as in insolvency; and that, upon that view, at the time of the assignment there were mutual credits, within the Gen. Sts. c. 118, § 26 (Pub. Sts. c. 157, § 27).

Payment had been demanded on the note, and we assume in favor of the defendant that it had a present right to sell the security, subject only to the conditions imposed by law upon its exercise. The conditions rested in its power to perform without the need of help from Borden, the debtor. On the other hand, Borden had the right to prevent the sale by payment, and, in that sense, the defendant's power could only be exercised with his concurrence. The question is whether, under these circumstances, the stock was held by the defendant "to be converted into money, so that the liability to account for it would ultimately become a debt." If so, there was a credit within the statute, but not otherwise. *Hathaway* v. *Fall River National Bank*, 131 Mass. 16. *Stetson* v. *Exchange Bank*, 7 Gray, 425, 428. *Rose* v. *Hart*, 8 Taunt. 499; 2 Smith Lead. Cas. (7th Am. ed.) 293.

If there had been no default, it is settled that there would have been no mutual credit. *Hathaway* v. *Fall River National Bank, ubi supra.* See also *Young* v. *Bank of Bengal*, 1 Deac.

622; 1 Moore P. C. 150. But it may be said that, before default, the normal and contemplated course of events is for the debt to be paid at maturity and the security returned, whereas, after a default through inability to pay, the normal and equally contemplated course of events is for the security to be converted into money. We do not think, however, that this distinction can prevail. As was intimated by Lord Brougham in *Young* v. *Bank of Bengal, ubi supra,* it is not "enough, if the transaction would most likely end in a debt." Where the security is worth more than the debt, a sale by the creditor is not made certain to take place by the default, for it is the interest of the debtor, and may be the duty of the assignee, in case he goes into insolvency, to redeem it. The default does not add a request by the debtor to the powers given to the creditor by law. No doubt there might be a request or authority to sell given by the debtor in such a way as to be irrevocable, or, even if revocable, to make the goods money in the hands of the creditor forthwith. We readily admit that, where bills are put into the hands of a bank to be collected and accounted for as money, as in *Naoroji* v. *Chartered Bank of India,* L. R. 3 C. P. 444, there is a credit within the statute, although there may be a legal right to withdraw them. In that case, so long as the bank holds the bills, it holds them not for return, but for conversion into money. That is the only end contemplated for the transaction. So where a consignee of goods, who has accepted drafts against bills of lading, is requested and irrevocably authorized to sell the goods. *Astley* v. *Gurney,* L. R. 4 C. P. 714. Further than this we cannot go, and we do not understand the later English cases to have gone, although in *Astley* v. *Gurney* it may be a little hard to see where the majority of the court found an irrevocable power, or any arrangement going beyond a mere permission to the consignees to sell if they wished to.

We are aware that, in a bankruptcy case in this district, it has been held that there were mutual credits under circumstances like the present. *Ex parte Whiting,* 2 Lowell, 472. But we think that, when goods are held with a mere power of sale, which the debtor or his assignee may defeat, and which the creditor has not even signified his election to exercise, it does not yet appear that they are to be accounted for as money by the

creditor, and therefore he is not yet in a position to set the debts due him against the proceeds if he sells.

In this case, the plaintiff has the power expressly given him by the assignment, assented to by the defendant, to pay all liens. It was not only his right, but his duty, to do so, if the result of a sale would be to withdraw the surplus proceeds from the general creditors. See *Alsager* v. *Currie*, 12 M. & W. 751, 758. But it is hard to believe that the instrument was intended to make the rights of parties depend upon the way in which secured creditors were paid off.

As we think the case must be decided for the plaintiff for the reasons indicated, it is unnecessary to consider whether, in case of a sale, the defendant would be accountable as a debtor, or whether it would not be its duty to hold the specific proceeds as a trustee, and whether a liability of the latter sort could or could not be brought into the mutual account. See *Lothrop* v. *Reed*, 13 Allen, 294, 295.                   *Plaintiff's exceptions sustained.*

*J. D. Ball*, for the plaintiff.

*C. W. Clifford*, for the defendant.