WESTERN UNION TELEGRAPH COMPANY *vs.* JOSIAH CALDWELL & others.

Suffolk.   November 19, 1884; November 18, 1885. — May 6, 1886.

A bill in equity filed in 1883, against A., his wife B., C., and D., executor of E.'s will, alleged the following facts: In 1872, the plaintiff, on a writ against A., made a special attachment of a parcel of land, standing in the name of B., which A. had caused to be fraudulently conveyed to her. At the time of the attachment, the land was subject to a mortgage made by A. and B. to C., who, in 1873, sold the land, under a power of sale contained in the mortgage, for more than enough to pay the mortgage debt, and paid over the surplus remaining after satisfying the first mortgage to E., the holder of a mortgage upon said land executed after the plaintiff's attachment. E. died in 1878, and in the same year D. was appointed executor of his will. Both C. and E. had notice, before the payment of the surplus to E., of the fraudulent conveyance, of the plaintiff's attachment, and of the pendency of his action. In 1883, the plaintiff recovered judgment in the action against A., and execution issued which is unsatisfied. E.'s estate is not fully administered, and his executor received assets within two years before

the filing of this bill, which was brought within thirty days after the judgment was obtained, and within one year after the plaintiff had notice of the receipt of such assets. *Held*, on demurrer by C. and D., that the bill set forth a good cause of action against D., but not against C.

BILL IN EQUITY, filed April 28, 1883, against Josiah Caldwell, Anita E. Caldwell, his wife, William R. Clark, Henry B. Hammond, surviving executor of the will of Benjamin E. Bates, and the Continental National Bank, alleging the following facts:

Before March 18, 1872, the record title to a certain parcel of real estate in Boston stood in the name of the defendant Anita E., but the defendant Josiah was the true, beneficial, and equitable owner thereof, he having conveyed or caused the same to be conveyed to Anita E. with the design of securing the same from attachment by a creditor of his, or in trust for him, whereby he was then entitled to a conveyance.

On March 18, 1872, the plaintiff made a special attachment of this parcel of land on a writ against said Josiah, dated March 12, 1872. This writ was duly returned to court, and, on March 30, 1883, judgment was entered in favor of the plaintiff for $7958.29, damage, and $40.77, costs, on which judgment execution issued on April 3, 1883, and is wholly unsatisfied.

On December 20, 1873, the defendant Clark, the assignee of a mortgage on said parcel of land given by said Josiah and Anita E., dated September 4, 1870, and duly recorded, for breach of the condition of the mortgage, and acting under a power of sale contained therein, sold and conveyed said parcel for $71,000. After payment of the amount due said Clark under his mortgage, there remained in his hands the sum of $33,000, a portion of which he paid to the defendant bank, which claimed by virtue of an attachment made on March 13, 1871. This payment was in excess of the amount to which said bank was entitled.

Clark paid all the surplus to Benjamin E. Bates, he claiming to be the holder of a second mortgage upon said parcel of land, for the sum of $40,000, delivered on November 12, 1872, but having no claim to any part of the surplus as against the plaintiff.

Before any payment or delivery by Clark to Bates or to said bank, Clark, the bank, and Bates had notice of the fraudulent conveyance, of the plaintiff's attachment, and of the pendency of his action.

Bates died testate on January 14, 1878, and his will was admitted to probate on February 26, 1878, and the defendant Hammond was, with another person since deceased, appointed executor thereof. The estate of Bates is not yet fully administered, and assets have come to the hands of said executor within two years last past, and the plaintiff first had notice of such receipt of assets within one year prior to the filing of the bill.

The bill further alleged a demand on the execution on April 26, 1883, upon the defendants, except the two first named, and a refusal by them to pay.

The prayer of the bill was, that the defendants be required to account to and pay over to the plaintiff said surplus and excess received respectively by Clark, the defendant bank, and Bates, to an amount sufficient to pay the plaintiff's judgment debt, interest, and costs; and for further relief.

The three last-named defendants filed separate demurrers to the bill, for want of equity and for laches.

The case was heard by *Holmes,* J., on the bill and demurrers, and reserved for the consideration of the full court. It was argued in November, 1884, and reargued in November, 1885.

*A. S. Wheeler & J. H. Young,* for Hammond.

*W. G. Russell & G. Putnam,* for Clark and the defendant bank.

*G. S. Hale,* for the plaintiff.

HOLMES, J.   This is a bill in equity brought against Josiah Caldwell and Anita his wife, William R. Clark, Henry B. Hammond, executor of the will of Benjamin E. Bates, and the Continental National Bank. The bill was brought on April 28, 1883, and is before us on demurrer. The material allegations are as follows:

On March 30, 1883, the plaintiff recovered a judgment against Josiah Caldwell. In that suit, it had attached, on March 18, 1872, land standing in the name of Mrs. Caldwell, on the ground that it was conveyed to her by her husband, Josiah Caldwell, in fraud of his creditors. At the time of the attachment, the land was subject to a mortgage made by Mrs. Caldwell, and held by the defendant Clark. After the attachment, but before the judgment, a second mortgage was made to Benjamin E. Bates. Later still, on December 20, 1873, Clark sold, under the usual power of sale, for breach of condition, satisfied

his debt, and paid over the surplus in part to the said Continental National Bank, an attaching creditor prior to the plaintiff, and the rest to said Bates. The only allegation against the bank is, that it received a larger portion than it was entitled to, and, as the claim against it is not pressed, we shall dismiss it without further consideration. But we are to take it that Clark and Bates knew of the plaintiff's action and attachment, although the plaintiff gave neither of them notice that it made a claim upon the proceeds of Clark's sale, and the plaintiff seeks to charge Clark and Bates's executor for the amount paid over to and received by Bates.

If the attachment had been an ordinary attachment, in a suit against Josiah Caldwell, of lands standing in his name, subject to a mortgage made by him, and if the surplus had remained in the hands of Clark at the time this bill was brought, it is settled that the plaintiff would have been preferred to a subsequent mortgagee. *Wiggin* v. *Heywood*, 118 Mass. 514. And it would seem to follow from that decision, that, if there is no other important distinction between this case and that, the payment of the surplus by Clark to Bates, the subsequent mortgagee, would not of itself be sufficient to deprive the plaintiff of his priority, Bates having knowledge of the attachment at the time he received the fund. In *Wiggin* v. *Heywood*, the court cannot have regarded the plaintiffs' rights as founded on the bill; for, if so, the fact that the surplus had not been paid over would have afforded no ground for preferring the plaintiff creditors' claim to a lien existing when the bill was filed.

In a case like *Wiggin* v. *Heywood*, the plaintiff's rights are founded on the lien originally acquired by his attachment, and they date from that. It is true that, as the lien is gone at law by the sale of the *res*, the substituted claim upon the proceeds has the characteristic infirmities of merely equitable rights. It may be, as used to be said of a trust, that it is not a *jus in rem*, and therefore may be lost if the property is transferred for value and without notice. But it is attached to a specific fund in the mortgagee's hands. See *Cook* v. *Basley*, 123 Mass. 396; *Varnum* v. *Meserve*, 8 Allen, 158, 160; *Brown* v. *New Bedford Institution for Savings*, 137 Mass. 262, 266; *Talbot* v. *Frere*, 9 Ch. D. 568, 573. And it may be asserted against privies taking the fund

with notice, as well as against the parties themselves.   Y. B. 14 Hen. VIII. 6, pl. 5.   *Dalamere* v. *Barnard*, Plowd. 346, 352 a. *Chudleigh's case*, 1 Rep. 120 a, 122 b.   Co. Lit. 272 b.   Bacon, Reading on Stat. of Uses, 7 Bacon's Works, (Spedding's ed.) 398, 405.   Lewin on Trusts, Introd. and *cc.* 1, 29, § 1.

The notice which is sufficient to charge a privy with a trust is knowledge of it, actual or constructive.   It is not necessary that the *cestui que trust* should give that notice, or inform the assign that he intends to insist upon his rights.   Lewin on Trusts, (7th ed.) *c.* 29, § 1, 728 *& seq.*   *Boursot* v. *Savage*, L. R. 2 Eq. 134.   We see no reason why more should be required as between an attaching creditor and a recipient of the fund on which he has an equitable lien, or why, if the recipient knows of the paramount attachment, and, with that knowledge, chooses to accept the fund, he should stand better than a purchaser from a trustee.   *Mead* v. *Orrery*, 3. Atk. 235, 238.   See *George* v. *Wood*, 9 Allen, 80, 83.   More especially, as an attachment is a fact of such a nature as necessarily to inform those who know of it of the creditor's intention to insist upon his rights under it.   Of course, we are not now speaking of the possible effect of laches.

Assuming that the plaintiff's equitable lien, if it ever had one, was not destroyed by the payment of the surplus to Bates with notice, it does not follow that the plaintiff is in a position to make Clark answerable for paying it over.   Clark's rights, as holder, for value and without notice, of a mortgage made by Mrs. Caldwell while she held the legal title, are paramount to the plaintiff's, and, on the other hand, the plaintiff's claim is not in privity with, but paramount to, the title of Mrs. Caldwell, Clark's mortgagor.   We are far from denying that Clark could have been made answerable for the surplus by a demand upon him while it was in his hands, or that filing a bill would have had the effect of a demand.   We cannot doubt that the plaintiff might have filed a bill to protect its rights on the strength of its attachment, before it had recovered judgment in its suit against Josiah Caldwell.   But neither making the attachment, nor recording it, amounted to a demand on Clark.   He was not bound to take notice of the record, according to *George* v. *Wood*, *ubi supra;* and Clark's actual knowledge did not dispense with a demand, if one was necessary.

Although the effect of the attachment may have been to avoid Mrs. Caldwell's title in favor of the plaintiff, subject to Clark's rights, and to give the plaintiff the right to follow the surplus, if so minded, even in Clark's hands, it did not convert Clark into a trustee, in a strict sense. There was no privity or personal relation between Clark and the plaintiff. It would be going far to say that, until a demand was actually made upon him, Clark had not the right to pay the fund in good faith, and subject to the plaintiff's rights, whatever they were, to the mortgagor from whose hands he received it, or to her representative. Analogies are not wanting in favor of Clark's having had a right to do so. *Loring* v. *Mulcahy*, 3 Allen, 575. However this may be, the plaintiff had no right to expect Clark to retain the fund indefinitely. At least it was bound to make a demand within a reasonable time. A reasonable time would be six years, in the absence of special circumstances. *Codman* v. *Rogers*, 10 Pick. 112, 120. See *Learned* v. *Foster*, 117 Mass. 365, 370 ; *Dodge* v. *Essex Ins. Co.* 12 Gray, 65, 71. The plaintiff suffered more than nine years to elapse before making any claim. On one ground or the other, the plaintiff is too late to hold Clark answerable for paying over the fund to Bates.

The considerations which exonerate Clark do not apply to Hammond, the executor of the will of Bates. The special statute of limitations is avoided by allegations that assets have come to the executor's hands within two years, and that the plaintiff first had notice of the receipt of such assets within one year. Pub. Sts. *c.* 136, § 11. It does not appear that the general statute of limitations has run. Hammond is chargeable now on the same grounds that Bates would have been when he received the money. The plaintiff's previous legal lien, and the lawful act of the mortgagee divesting it, gave it an equitable right to arrest the surplus proceeds wherever it found them, until they reached the hands of a purchaser for value and without notice. Without saying that there may not be a case of laches disclosed when the case is tried, even if the statute of limitations has not run, we cannot say, as matter of law, that the bill discloses one.

It was argued that, this being a special attachment of property standing in the name of a third person, and the suit to recover possession, provided for by the Pub. Sts. *c.* 172, § 49, to try Mrs.

Caldwell's title being impossible, equity would not undertake to provide for a *casus omissus*, or to enlarge a purely statutory remedy. But the principle of this argument is disposed of by *Wiggin* v. *Heywood*, *ubi supra*. In the case of every attachment, a sale of the land by the mortgagee makes it impossible to carry out the statutory provisions concerning the levy of executions. The rights of Mrs. Caldwell are protected by making her a party to the bill. See Pub. Sts. *c.* 151, § 3.

*Demurrer of Hammond overruled. Demurrers of Continental National Bank and Clark sustained.*