BEACON TRUST COMPANY *vs.* FRANK S. ROBBINS.

Suffolk. November 16, 1898. — May 17, 1899.

Present: FIELD, C. J., HOLMES, KNOWLTON, MORTON, LATHROP, BARKER, & HAMMOND, JJ.

*Promissory Note — Accommodation Note — Auditor — Finding — Rights of Pledgee and Surety.*

Evidence that when a promissory note was given the accounts of previous dealings between the maker and the payee were closed, that there were no subsequent transactions between them, that the note was asked for and given because the payee was short of money and asked for help of the maker to the amount of the note, that it was to be taken care of by the payee if the maker should not have bought goods enough before its maturity to cover its amount, that there was no agreement that the maker should purchase goods of the payee, and that none were so bought, will justify a finding that the note was an accommodation note.

In an action upon a promissory note, a finding against the contention that the plaintiff, although at first merely a pledgee of the note, became the absolute purchaser and owner of it when, before receiving notice that the note was given for the accommodation of the payee, the plaintiff settled with the payee, retaining his demands upon the maker, is necessarily involved in the findings that the maker, after the date when he notified the plaintiff that the note was given for accommodation only, was entitled to the rights of a surety, and that the plaintiff should receive less than the amount of the note.

The facts that a trust company, the holder of a promissory note, having made a settlement with the maker, debited the note on its books as paid, and entered another note, payable to the maker of the first note and by him pledged to the company, and theretofore held by it as collateral security, as a time loan, do not require a finding, in an action on the latter note, that the holder had thus become the absolute owner of it; but in determining that question, the judge, sitting without a jury, could consider the evidence as to the terms of the pledge, as to how the sum paid by the pledgor in settlement had been arrived at, and the plaintiff's subsequent dealings with other notes upon which its demands against the pledgor were founded, or which were also held by the plaintiff as collateral to those demands.

A finding of fact by an auditor is not binding on the judge, sitting without a jury, but is merely evidence for him to weigh in connection with all the evidence pertinent to the question to be decided.

In this case, which was an action on a promissory note pledged to the plaintiff, it cannot be said that, upon the evidence, a finding that the plaintiff did not become an absolute owner of the note was unwarranted.

If two promissory notes are deposited with a trust company as collateral security for the payment of another note, or of any other direct or indirect liability of the pledgor to the pledgee either due or which might thereafter be contracted, in an action by the pledgee against the maker of one of the pledged notes, which was given by the maker for the accommodation of the pledgor and the pledgee

notified of that fact before suit, a ruling or finding that this note was held by the plaintiff as collateral to all the indebtedness of the pledgor to the plaintiff is required, and the defendant's rights and obligations as surety are to be adjusted on that basis.

The maker of a promissory note, who has notified the holder of it as a pledgee that it was given for accommodation only, is entitled to require the holder, before resorting to the note, first to credit actual payments upon other notes for which this was collateral, and also the amount of any other collateral security which he has surrendered without the maker's consent after notice that the latter was only a surety; and to have no judgment rendered against him in an action on the note in excess of the balance of the whole debt for which the note was pledged reduced by the sum of all payments which the plaintiff has actually received and of the collateral security surrendered without the defendant's consent after knowledge that he asserted that he was merely a surety.

A trust company, holding several claims against a firm represented by promissory notes made or indorsed by the firm, received a certain sum, upon the basis of twenty-five per cent, in consideration of the assignment of its claims, reserving its rights against all parties except the firm, and not releasing its claim upon two collateral notes, although one of these notes was included in the total sum on which the percentage was calculated. The company made no appropriation of any part of the sum so received to the part payment of either collateral note, and continuously thereafter treated them as demands for their full face value, and of which it had the exclusive ownership. *Held,* in an action by the company against the maker of one of the collateral notes after notice that it was an accommodation note, that, in dealing with the other collateral note in adjusting the amount of the judgment, the plaintiff was not entitled to an allowance of twenty-five per cent because of the payment so received by it.

CONTRACT, upon a promissory note for $1,000, dated August 7, 1896, payable in four months after date to the order of Cunningham, Banks, and Company, signed by the defendant, and indorsed to the plaintiff. Trial in the Superior Court, without a jury, before *Hammond,* J., who found for the plaintiff; and, at the request of both parties, reported the case for the determination of this court. The facts appear in the opinion.

The case was argued at the bar in November, 1898, and afterwards was submitted on briefs to all the justices except *Field,* C. J.

*P. G. Bolster,* for the defendant.

*S. H. Tyng,* for the plaintiff.

BARKER, J. The plaintiff sues upon a promissory note, by which the defendant, on August 7, 1896, promised to pay in four months after date to the order of Cunningham, Banks, and Company the sum of $1,000. Before the giving of this note, the defendant had bought merchandise of the payee, but the accounts between them had been previously closed, and he then owed the payee nothing. The payee, being short of money, asked the

defendant for help, saying that, if he would give this note, the payee would take care of it, if when it should become due the defendant had not bought of the payee goods to the amount of the note. Both expected that the defendant would continue to be a customer of the payee, and that if the defendant wanted to purchase merchandise of the payee the note would be paid for in merchandise thereafter delivered. But there was no agreement that such should be the case, and the defendant did not in fact receive any merchandise from the payee after giving the note. This note the payee indorsed in blank and delivered to the plaintiff on August 11, 1896, as collateral security. As part of the same transaction, the plaintiff took from Cunningham, Banks, and Company their promissory note, dated August 11, 1896, payable on demand after date for the sum of $1,500, with interest, for which note the firm received from the plaintiff full consideration, and the plaintiff also received from the firm another promissory note, dated July 27, 1896, for the sum of $987.53, payable four months after its date to the order of the firm, of which note the Laconia Car Company was maker, and which when so delivered to the plaintiff was indorsed by the firm. The note of August 11, 1896, was upon a form known as a collateral note, beginning thus:

"$1,500. Boston, August 11, 1896. On demand, after date, for value received, we promise to pay to the Beacon Trust Company, of Boston, or order, at the said Trust Company, fifteen hundred dollars, with interest at the rate of . . . per centum per annum, having deposited with the said Trust Company as collateral security for the payment of this or any other direct or indirect liability of . . . to the said Trust Company due, or that may be hereafter contracted, the following described security: note Frank S. Robbins, dated Aug. 7th, payable in 4 months, for $1,000, and note Laconia Car Co., dated July 27th, payable in 4 months, for $987.53, both notes payable to order of Cunningham, Banks, & Co."

Then followed, before the signature, the usual provisions relating to depreciation of the collateral, the deposit of additional security, and the sale of the property pledged or to be deposited as collateral. About September 16, 1896, the plaintiff informed the defendant by mail that the plaintiff held the note now in suit,

and asked him if he wished to buy it or to pay it before maturity; but the defendant did not reply. It does not appear whether this was before or after the failure of Cunningham, Banks, and Company. Between August 11 and November 27, 1896, the firm made a voluntary assignment for the benefit of creditors, and on the day last named made a separate settlement with the plaintiff, under these circumstances. The plaintiff held the $1,500 note of August 11, 1896, the note in suit of $1,000, and the Laconia Car Company note of $987.53, neither of the two last mentioned notes being yet due, and both of them bearing the indorsement of the firm, and both held by the plaintiff as collateral, as before stated. Also, as its absolute property, an overdue note of one Drake for $600, dated May 20, 1896, payable in three months from its date to the firm and bearing the firm's indorsement, and another note for $600, dated August 25, 1896, made by one Mayberry, payable in four months from its date to the order of Drake, and which Drake on August 25, 1896, had procured and had indorsed and delivered to the plaintiff as collateral security for the payment of his own overdue note for $600 above mentioned. Also an overdue note of one Bailey for $565.17, dated August 26, 1896, and payable in two months from its date, and which had been discounted by the plaintiff before the maturity of the note for the firm, upon the indorsement of the note by the firm and its delivery to the plaintiff. Also, lastly, another overdue note of the Laconia Car Company for $850, dated August 27, 1896, payable in two months from its date to the order of the firm, and which before maturity had been indorsed and delivered by the firm to the plaintiff in part payment of a former note.

As a result of interviews and conversations between a member of the firm and the president of the plaintiff corporation, concerning a proposed settlement of the plaintiff's claims against the firm, on November 27, 1896, the firm paid the plaintiff the sum of $1,138.24, for which the plaintiff executed and delivered to some member of the firm an instrument which stated that, in consideration of the sum named "paid by E. B. Hunting of Baltimore," the plaintiff assigned to Hunting "all claims represented by said company (the plaintiff) against the firm of Cunningham, Banks, & Co., of said Boston, such claims being

represented by a note for $565.17, made by A. H. Bailey, dated August 26th, 1896, and payable in two months, and a certain other note made by H. Drake for $600, dated May 20th, 1896, payable in three months, also a certain other note for $850.00, made by the Laconia Car Co., dated August 27th, 1896, payable in two months, all indorsed by said Cunningham, Banks, & Co. Also a certain note for $1,500 made by Cunningham, Banks, & Co., for the payment of which, two notes, one by the Laconia Car Co. for $987.53, dated July 27th, 1896, payable in four months, are held as collateral security for the payment of the $1,500 note. It being understood that this assignment shall not affect the makers nor the indorsers upon any of the notes hereinbefore mentioned other than Cunningham, Banks, & Co. Nor shall the claim of said company (the plaintiff) upon the two collateral notes be released by this instrument."

The sum of $1,138.24 so paid to the plaintiff was arrived at by taking twenty-five per cent of the Bailey note for $565.17, the Drake note for $600, the Laconia Car Company note for $850, the $1,500 note of August 11, 1896, and the Laconia Car Company note of $987.53, with some addition for accrued interest. At the time the payment was made and the instrument of November 27, 1896, was executed, the plaintiff knew that the firm had made a common law assignment and were then settling with their creditors, so far as they could, on a basis of twenty-five cents on the dollar, and that this settlement took the form of assignments of the claims against the firm to one Hunting. No directions were given by the firm as to the application of the sum of $1,138.50, and no notice was given by the plaintiff to the defendant or to the firm of an appropriation of that payment. Upon receiving it, the plaintiff, on November 27, 1896, debited on its paying teller's cash book as " time loans paid " the Bailey note $565.17, and Laconia Car Company note (on account of release of indorsement) $73.07, and also as " call loans paid " Cunningham, Banks, and Company $1,500, and credited as " Time Loans " the Robbins note, now in suit, $1,000. In other words, if these entries were under the circumstances an appropriation by the plaintiff of the sum of $1,138.24, then paid by the firm in settlement of the plaintiff's demands against it, the plaintiff then, and before notice that the defendant would assert that the

note now in suit was an accommodation note, holding that note and having stipulated that its claim upon it should not be released, appropriated that note, and the cash payment of $1,138.24, to the payment in full of the Bailey note of $565.17, and of the firm note of August 11, 1896, of $1,500, and to the part payment, to the extent of $73.07 of one of the Laconia Car Company notes.

On December 1, 1896, the plaintiff agreed with the Laconia Car Company to sell and transfer all the claims of the plaintiff against that company to one Stone upon payment, on or before January 1, 1897, of twenty-five cents on the dollar.

The note in suit fell due on December 10, 1896, and on that day the defendant wrote the plaintiff a letter, received on the next day, in which the defendant stated that the note was given for accommodation only ; that he felt he should pay only enough to make good the collateral note of $1,500 ; that he was informed by Cunningham, Banks, and Company that they had paid the plaintiff $375 on the $1,500 note, also $246.88 on the car company note of $987.53, and that there was a further payment of $246.88 from the car company itself upon the same note of $987.53, making a total of $868.76 received by the plaintiff upon the collateral note of $1,500, and leaving a balance due the plaintiff of $631.24, which the defendant offered to pay. On December 16, 1896, the present action was begun.

On December 26, 1896, the Mayberry note of $600, given to the plaintiff by Drake on August 25, 1896, as collateral security for the payment of his own overdue note for the same amount, on which was the indorsement of the firm, came due and was paid to the plaintiff, and both the Drake and Mayberry notes were given up to Drake. Upon that occasion both Drake and Cunningham asserted that the sum of $150 had been paid by the firm on the Drake note in the payment of $1,138.24, on November 27, 1896 ; but the plaintiff's treasurer then said that he had applied or was going to apply that $150 on the $1,500 Cunningham, Banks, and Company note which the plaintiff then held. The plaintiff has ever since retained the full sum of $600 paid by Mayberry, and has not offered to account with Drake for any part of it.

The Bailey note of $565.17 fell due on October 29, 1896, and was dishonored. Afterward the maker went into insolvency,

and the plaintiff, on July 16, 1897, received from his assignees in insolvency the sum of $217.20 in payment of the note, which the plaintiff then delivered up to the assignees.

On January 1, 1897, the plaintiff received $216.71 as twenty-five per cent of the car company note of $850 and accrued interest, and assigned that note to Stone. Nothing was paid on the car company note of $987.53 until February 4, 1897, when the plaintiff received a thirty per cent dividend on that note, and a further dividend of five per cent on the $850 car company note which it had previously assigned to Stone, these two payments amounting to the sum of $343.02, and it again assigned to Stone all its claims against the car company. These payments were received and these assignments to Stone were made after the plaintiff had knowledge that the defendant contended that the note in suit was an accommodation note, and were without the defendant's knowledge or assent. The car company was in insolvency in some New Hampshire court, and it was not shown whether the proceedings in insolvency had been terminated, what amounts had been paid to their other creditors, or what were its assets. At the time of the various settlements, no way was known to the plaintiff of realizing more than it did realize, and in making the settlements the plaintiff acted in good faith.

The facts above recited are drawn from an auditor's report. That report, with the testimony of a member of the firm of Cunningham, Banks, and Company that the note of the Laconia Car Company for $987.53 was not an accommodation note, but for value, and that Hunting had on March 7, 1898, delivered to the witness a sealed release of the firm and of its members from all liability upon all notes or their indorsements of which Hunting was assignee under the plaintiff's assignment of November 27, 1896, was all the evidence in the court below.

Upon that evidence the defendant asked the court to rule that the plaintiff was not entitled to recover; that the plaintiff did not own the note to which the note in suit was collateral, and so could not maintain an action on the note in suit; that the defendant was entitled to have the sum of $375 out of the sum of $1,138.24 paid on November 27, 1896, applied in reduction of the $1,500 note in determining the amount for which the plaintiff could enforce the note in suit, and was also entitled to have

the sum of $150 applied in reduction of the $1,500 note on account of a payment of that sum out of the $1,138.24 on the Drake note, and was also entitled to have the full amount of the car company note of $987.53 applied in reduction of the $1,500 note, in determining the amount for which the plaintiff could enforce the note in suit.

The plaintiff asked the court to rule that it was entitled to recover the full amount of the note in suit with interest; that the note was founded upon sufficient consideration, and that there had been no failure of consideration; that the plaintiff had not released the defendant's cosurety, but had merely assigned the car company note of $987.53, and that the other notes held by the plaintiff were independent transactions, which had no relation to the liability of the defendant in this case, and that the release from Hunting of March 7, 1898, was incompetent and immaterial.

The court ruled that the Hunting release was immaterial, found that the note in suit was an accommodation note, that that fact was not known to the plaintiff until December 11, 1896, and was then made known to the plaintiff; that the note in suit was held by the plaintiff as collateral to all the indebtedness of Cunningham, Banks, and Company to the plaintiff; that the instrument of November 27, 1896, did not release the defendant, except to the extent that the payment of $1,138.24 reduced the indebtedness due from Cunningham, Banks, and Company to the plaintiff on that day, and that after December 11, 1896, the defendant was entitled to the rights of a surety; and that as against him the plaintiff had failed to show that it should not be charged with the whole amount of the $987.53 note.

After a formal finding for the plaintiff in the sum of $394, which included interest from the date of the writ, both parties excepting, at the request of their counsel the case was reported for the determination of this court.

It is conceded that the plaintiff became the pledgee of the note in suit for value and before its maturity, and without knowledge that it was, as between the maker and the payee, given for the accommodation of the latter. The plaintiff can recover the full amount of the note and interest, if it was not an accommodation note, or if, before notice that it was an accommodation

note, the plaintiff became instead of its pledgee the absolute purchaser of the note, or if the plaintiff holds it as pledgee for claims to liquidate which it has the right to apply the whole amount of the note.

The contention that the note was not an accommodation note is disposed of by the contrary finding or ruling in the court below. Upon the evidence that when the note was given the accounts of previous dealings between the maker of the note and the payee were closed, that there were no subsequent transactions between them, that this note was asked for by the payee and given by the maker because the payee was short of money and asked for help of the maker to the amount of the note, that it was to be taken care of by the payee if the maker should not have bought goods enough before its maturity to cover its amount, and that there was no agreement that the maker should purchase goods of the payee, and that none were so bought, it was open to the court below to find that the note in suit was an accommodation note, and that finding must stand.

There was no distinct finding of the court below upon the plaintiff's contention that, although at first merely a pledgee of the note in suit, it became the absolute purchaser and owner of the note when, on November 27, 1896, before receiving notice that the note in suit was given for the accommodation of Cunningham, Banks, and Company, it settled with that firm for the sum of $1,138.24, retaining its demands upon the maker of this note. But a finding against that contention is necessarily involved in the findings that the defendant, after December 11, 1896, was entitled to the rights of a surety, and that the plaintiff should recover less than the amount of the note in suit. We think that the court was justified in finding that the plaintiff had not changed its original status of pledgee to that of an absolute purchaser or owner. While on November 27, 1896, the plaintiff debited the note of August 11, 1896, as paid, and entered the note in suit, which it had theretofore held as collateral, as a time loan, these entries did not require a finding that it had thus become the absolute owner of the note in suit. In determining that question the court below could consider the evidence as to the terms of the pledge, as to how the sum of $1,138.24 paid by the pledgor in settlement had been arrived at, and the

plaintiff's subsequent dealings with the other notes upon which its demands against the pledgor were founded, or which were also held by the plaintiff as collateral to those demands. It was in evidence that the sum paid in settlement was arrived at by taking twenty-five per cent of the amount of five notes, with interest, and that the $1,500 note of August 11, 1896, was one of the five notes upon which twenty-five per cent was so reckoned. In making its book entries the plaintiff, besides charging off that note and the Bailey note of $565.17 as fully paid, also debited as a payment on one of the Laconia Car Company notes the amount of $73.07. Yet it subsequently received dividends upon the full amount of each of the Laconia Car Company notes. Another of the notes, twenty-five per cent of which went to make up the payment of $1,138.24, was the Drake note of $600, as collateral to which the plaintiff also held the Mayberry note of the same amount, and when the latter note was paid in full the plaintiff retained as its own the full amount, and the plaintiff's treasurer then said that the plaintiff then held the $1,500 note of August 11, 1896. The auditor says that, if it is competent for him to find upon the evidence which he states, that the plaintiff made an appropriation of the payment of the $1,138.24, among the notes held by it on November 27, 1896, he finds that the plaintiff applied the same as shown by the entries in its paying teller's cash book, which have been stated. If this statement of the auditor can be regarded as a finding of fact, it was not binding on the court below, but merely evidence for that court to weigh, in connection with all the evidence pertinent to the question whether by the transactions of November 27, 1896, the plaintiff became, instead of a pledgee, the absolute owner of the note in suit. We must assume that the court below found that the plaintiff did not become an absolute owner, and we cannot say that upon the evidence that finding was unwarranted.

The plaintiff's rights are therefore to be settled upon the basis that it is a pledgee of the note in suit, and that, after the notice of December 11, 1896, that the note was an accommodation note, the defendant had the rights of a surety. *Guild* v. *Butler*, 127 Mass. 386, and cases cited.

At the argument before us, the plaintiff contended that, if the defendant had the rights of a surety, his rights were to be meas-

ured by taking into the account only the $1,500 note of August 11, 1896, the note in suit, and the car company note of $987.53. But the terms of the note of August 11, 1896, by which the plaintiff became pledgee of the note in suit, are otherwise.　The two notes pledged were deposited with the plaintiff as collateral security, not only for the payment of the $1,500 note of August 11, 1896, but also of any other direct or indirect liability of the pledgor to the plaintiff, either due or that might thereafter be contracted.　These terms of the contract required the ruling or finding of the court below, that the note in suit was held by the plaintiff as collateral to all the indebtedness of the pledgor to the plaintiff, and the defendant's rights and obligations as surety are to be adjusted on that basis.　It cannot be said, as the defendant contends, that by the discharge of the pledgor from liability the plaintiff lost its right to look to the note in suit, for all its rights to that note were reserved in the transaction. See *Sohier* v. *Loring*, 6 Cush. 537 ; *Hutchins* v. *Nichols*, 10 Cush. 299 ; *Potter* v. *Green*, 6 Allen, 442.　So far as the arrangement was a voluntary surrender of the liability of the pledgor it was made in ignorance of the defendant's rights as a surety, while the plaintiff had previously informed the defendant that it held the note in suit, and had received from him no reply, or intimation that he was an accommodation maker.

For convenience we, for the present, disregard all questions of interest, although they may have to be dealt with hereafter in determining the amount of the judgment to be entered.

When the pledge was made, the whole indebtedness of the pledgor to the plaintiff seems to have consisted of the amount of the note of August 11, 1896, for $1,500.　The Drake note of May 20, 1896, was at some time discounted for the pledgor by the plaintiff; but this is not shown to have been done before August 11, 1896.　It was owned by the plaintiff at the time of its maturity and dishonor, on August 23, 1896, and we assume in favor of the plaintiff that the pledgor's conditional liability, as indorser of this and the other notes indorsed by him, was fixed by due demand and notice of dishonor.　We therefore add the amount of the Drake note, or $600, and next the amount of the Bailey note of $565.17, and finally that of the Laconia Car Company note of $850, all of which were acquired by the plaintiff

before November 27, 1896, and all of which, for the present purpose, are to be considered as liabilities of the pledgor to the plaintiff, to the amount of the $1,500 note of August 11, 1896; and the amount of these four notes, or the sum of $2,515.17, not reckoning interest, is the sum for the payment of which the plaintiff could resort to the note in suit as a collateral security. The defendant's right as surety is to require the plaintiff, before resorting to the note in suit, first to credit actual payments to it, and also the amount of any other collateral which it surrendered without the consent of the defendant after notice that he was only a surety; and to have no judgment rendered against him on the note in suit in excess of the balance of the whole debt for which the note was pledged, reduced by the sum of all payments which the plaintiff actually received, and of the collateral surrendered without the defendant's consent after knowledge that the defendant asserted that he was merely a surety.

The payments actually received by the plaintiff, which the defendant as surety has the right to have taken into an account in determining the sum for which judgment shall be entered against him on the note in suit, were the sum of $1,138.24 paid on November 27, 1896, by the pledgor; $600 paid by Mayberry on the Drake note, December 28, 1896; the further sum of $216.71, paid on January 1, 1897, on the Laconia Car Company note of $850; the sum of $343.02, paid on February 9, 1897, on the two Laconia Car Company notes, and finally the sum of $217.20 paid on July 16, 1897, on the Bailey note, — all of which actual payments amount to the sum of $2,515.17. The deduction of these actual payments leaves a balance of $1,000, or the amount of the note in suit. But a still further deduction must be made because of the plaintiff's dealing with the Laconia Car Company note of $987.53, after notice on December 11, 1896, that the note in suit was an accommodation note. As the plaintiff held that note also as collateral, and it was not an accommodation note, the defendant was entitled to its benefit, and the plaintiff by voluntarily surrendering it without the defendant's consent would exonerate the latter to the amount so surrendered. *Guild* v. *Butler*, 127 Mass. 386. *Thayer* v. *Finnegan*, 134 Mass. 62. *Fitchburg Savings Bank* v. *Torrey*, 134 Mass. 239. *Wilson* v. *Bryant*, 134 Mass. 291, 297. *Union Insti-*

*tution for Savings* v. *Hill*, 139 Mass. 47, 50. *Goodwin* v. *Massachusetts Loan & Trust Co.* 152 Mass. 189. It is true that, before the plaintiff learned that the defendant stood in the position of a surety, it had agreed to a settlement of its demands against the Laconia Car Company by which the plaintiff had agreed to transfer all its claims against that company to Stone upon the payment to the plaintiff on or before January 1, 1897, of twenty-five per cent of the claims. We assume that, if this agreement had been carried out, the surrender of the $987.53 note, like that of the $850 note, would have given the defendant no right to have the doctrine of *Guild* v. *Butler* applied in his favor. But the agreement made on December 1, 1896, for the surrender or assignment of the car company claims was not performed in respect of the note for $987.53. No payment of the twenty-five per cent of that note was made or offered until February 9, 1897. In the mean time the plaintiff had received notice that the defendant stood in the position of a surety. After January 1, 1897, the plaintiff was no longer bound by its agreement to surrender or assign the note on which no payment had been made, and its assignment to Stone by the instrument of February 9, 1897, was a voluntary surrender of the amount remaining due on that note, and exonerated the defendant to that amount. In the actual payments received by the plaintiff was a payment upon this note of thirty per cent on $296.25. The amount of the further deduction to which the defendant was entitled because of the surrender of this note was therefore $691.28. This leaves as the amount for which the plaintiff could recover, if interest were not to be taken into the account, the sum of $308.72. This amount differs from that found by the court below, which, without reckoning interest, was $359.70, because of the omission of that court to credit the second payment of five per cent, or $42.50, as also the payment of $4.21, on account of interest in the payment of January 1, 1897, on the $850 car company note, and the further payment of $4.27 on account of interest in the payment of February 9, 1897, upon the two car company notes. The last two items were disregarded by the court below because, as the report states, that court thought it equitable to compute interest from the date of the writ, rather than to make an extended calculation upon the various claims and payments,

and the counsel for neither party has seen fit to apply for a modification of the finding, because of the way in which the court dealt with the question of interest, although leave was given for such application in the memorandum of the presiding justice.

The plaintiff contends that, in dealing with the note for $987.53, an allowance of twenty-five per cent should be made because of the payment of $1,138.24 in the settlement of November 27, 1896. But in that settlement the plaintiff reserved its rights to the note, it made no appropriation of any part of the $1,138.24 to the part payment of the note, and it continuously thereafter treated the note as a demand for its full face value, and of which it had the exclusive ownership. The plaintiff's reservation of its rights against all other parties, except Cunningham, Banks, and Company, was legal and effective. *Sohier* v. *Loring*, 6 Cush. 537. *Hutchins* v. *Nichols*, 10 Cush. 299. *Potter* v. *Green*, 6 Allen, 442. We see no reason why it could not enforce the note for $987.53 against the maker for its full amount, without any deduction on account of the payment of ·the $1,138.24. If there was no objection to the finding of the plaintiff's damages except the omission to credit the amounts of $4.21 and $4.27 above mentioned, we should order judgment upon the finding, because these omissions come from the method in which the court below dealt with the question of interest, and to which method neither party objected. But the omission to credit the second payment of $42.50 made upon the car company $850 note must, in any event, be corrected. For that purpose the finding must be set aside. If the parties agree upon the amount for which judgment should be entered for the plaintiff in accordance with the rules which we have stated, judgment should be entered for that amount. Otherwise, the case should be sent to an assessor to determine the amount due under the Massachusetts rule in case of partial payments, or that amount should be otherwise determined in the court below.

> *Finding set aside.   Proceedings to be taken in the Superior Court to determine the amount for which the plaintiff shall have judgment.*