NASHUA SAVINGS BANK *vs.* JOHN E. ABBOTT, administrator.

Suffolk.     March 21, 1902. — May 23, 1902.

Present: HOLMES, C. J., MORTON, BARKER, HAMMOND, & LORING, JJ.

*Stock Exchange. Assignment. Contract,* Construction. *Equity Jurisdiction.*

A seat in the Boston stock exchange, which can be transferred under certain restrictions and on the member's death can be sold by a committee and the balance of the proceeds given to the legal representatives of the deceased, is property on which a lien can be enforced in equity.

An assignment to a bank of certain property, executed by W. and his wife, to secure their joint and several note for $4,500 contained the words " This assignment is voluntary on our part and shall remain in full force until all the indebtedness of said W. to the said bank shall have been paid." Later the note was renewed by a like joint and several note for $5,000 including another loan of $500, and upon the new note was a statement that it was secured by the property assigned. Between the making of the original note and the renewal W. borrowed an additional $2,300 from the same bank, giving his personal note with the indorsement of a third person. After a part payment on this note, a like note for $2,000 similarly indorsed was given for the balance due. Neither of the last named notes mentioned the assignment. *Held,* that by the language used in the assignment it was not intended to give the bank a lien for all possible future indebtedness, and that the note for $2,000 was not entitled to share in the security of the assignment.

Where a seat in the Boston stock exchange was assigned to a bank by a member to secure his note, and after his death the seat was sold under the rules of the exchange and the balance of the proceeds paid to the administrator of his estate, notice of the assignment having been given by the bank both to the exchange and the administrator, it was *held,* that the bank's lien could be enforced by a suit in equity against the administrator who held the proceeds of the sale subject to the lien, and, having in his hands more than enough to discharge it, he could be ordered to pay the required sum to the plaintiff.

One having a lien on certain property of a person deceased insolvent created by an assignment securing a note of the deceased, does not lose his lien by failing to sue on the note or to prove it before the commissioners within the two years fixed by the special statute of limitations, or by an attempt afterwards abandoned to enforce his claim on the note in equity under Pub. Sts. c. 136, § 10. Neither the debt nor the lien are affected by these things, and, if the assignee has been

guilty of no laches in insisting on his lien, he can enforce it in equity against the property, or against its proceeds in the hands of one holding them with notice of the lien.

BILL IN EQUITY, filed November 22, 1900, against the administrator of the estate of Allen S. Weeks, to have the proceeds from the sale of a seat or membership in the Boston Stock Exchange declared charged with an express trust or lien by reason of a certain assignment in writing dated October 6, 1883, securing the payment, as alleged, of two promissory notes, one for $5,000 signed by Allen S. Weeks and Lucy N. Weeks, and the other for $2,000 signed by Allen S. Weeks as maker and Henry Sayles as indorser.

The case was heard by *Morton*, J., who made certain findings, and, at the request of the parties, reported the whole case for the consideration of the full court. If, upon the law and facts, the plaintiff was entitled to recover upon the first note mentioned, a decree was to be entered for the plaintiff in the sum of $4,654.26, with interest from January 23, 1899. If, upon the law and facts, the plaintiff was entitled to recover on the second note, a decree also was to be entered thereupon for the plaintiff in the additional sum of $2,000, with interest from November 30, 1896. If the plaintiff was not entitled to recover upon either note, a decree was to be entered of " Bill dismissed."

By the terms of the report the bill and answer might be referred to and also the record in *Powow River National Bank* v. *Abbott*, 179 Mass. 336.

The justice, after making a statement of the facts of the case, concluded his report as follows : " Upon so much of the foregoing statement as relates to what took place before the commissioners, I found and ruled, subject to the defendant's exception, that the plaintiff bank had not waived its security, if it had any."

The assignment was as follows :

" Boston, October 6, 1883. For value received, we hereby assign to the Nashua Savings Bank, and relinquish and make over to said Bank, all our right, title and interest, in the membership and seat in the Boston Stock Exchange held by Allen S. Weeks. This assignment is voluntary on our part and shall remain in full force until all indebtedness of said Allen S. Weeks

to said Bank shall have been paid.    Allen S. Weeks, Lucy N. Weeks."

The first mentioned note was as follows :

" Brookline, Mass., Nov. 1, 1894.    $5,000.    On demand, for value received, we jointly and severally promise to pay the Nashua Savings Bank, five thousand dollars with interest at the rate of six (6) per cent per annum, payable semi-annually. Allen S. Weeks, Lucy N. Weeks."

" Collateral Security.    One membership (or seat) of the Boston Stock Exchange."

There were several indorsements of interest received, and an indorsement, dated January 23, 1899, of the payment of $1,010.74 on account of the principal of the note.

The second mentioned note was as follows :

" Boston, May 31, 1890.    No. ——.    $2,000.    On demand, for value received, six months after date, I promise to pay the Nashua Savings Bank, or order, two thousand dollars, at the office of said Bank, in Nashua, N. H., with interest from date at the rate of six (6) per cent, payable semi-annually in advance. Allen S. Weeks."

There were indorsed on the note semi-annual payments of interest up to April, 1897, and the signature of Henry Sayles as indorser.

The following are extracts from the Constitution of the Boston Stock Exchange :

" Article X.    Election to Membership.    Section 1.    The election of members shall be made by ballot, and no person shall be eligible who is not twenty-one years of age at the time of his application for admission.    The applicant for admission must be proposed by at least two members of the Exchange to the Governing Committee, who shall report thereon before the day of election.    The name of the applicant, and of the parties proposing him, shall be posted in the Exchange from the day he is proposed to the Committee until the day of the election.    The name of the candidate must be proposed at least ten days preceding the election, and fifteen black balls shall exclude.    In the event of non-admission, a new election for the same candidate shall not be held within thirty days of the last ballot, nor be acted upon until ten days from the date of application."

" Article XII. Transfer of Membership. Section 2. Whenever any member wishes to transfer his membership, the name of the party to whom he proposes to transfer shall be submitted to the Governing Committee, and his election shall be made by ballot as provided in Article X.

" Section 3. In no case shall any transfer of membership be permitted until all dues to the Stock Exchange shall have been paid in full, said dues being hereby declared a prior lien upon the proceeds, to be satisfied in full before any distribution thereof shall be made.

" Section 4. When a member dies, the Governing Committee may dispose of his membership. From the proceeds they shall pay what they consider valid claims of the members of the Exchange, and shall pay any balance to the legal representatives of the deceased."

" Section 6. All contracts, debts, or obligations of every description, with or to members of the Exchange, of a member who agrees to transfer his membership, shall become due and payable when notice of said agreement to transfer is posted upon the Bulletin of the Exchange, and shall be liquidated and paid, as allowed by the Governing Committee, out of the proceeds of said membership, upon consummation of the transfer thereof. This law shall also apply in every case where a membership is transferred by the Governing Committee."

" Article XIV. Obligation to Abide by the Constitution. The Constitution and By-Laws of the Exchange shall be recorded in a book to be provided therefor, and each and every member of the Exchange, together with all who may at any time hereafter be admitted, shall sign the same, thereby pledging themselves to be governed by said Constitution and By-Laws, and by such other rules and regulations as may from time to time be adopted by the Exchange."

" Article XVII. Gratuity Fund. Upon the death of any member of the Exchange, there shall be levied and assessed against each surviving member the sum of twenty dollars ($20), and the sum of three thousand dollars ($3,000) shall be paid, as a gratuity to the representatives of the deceased, on the conditions as follows :

" First. — Should the member die leaving a widow and no

children, the sum of three thousand dollars ($3,000) shall be paid to such widow for her own use."

" Fourth. — Should the member die leaving neither widow or children, then the whole sum of three thousand dollars ($3,000) shall be paid to such person or persons as he may especially designate, and in case of his decease without any especial designation, it shall be paid to his heirs-at-law.

" Fifth. — Nothing herein contained shall ever be taken or construed as a joint liability of the Exchange, or its members, for the payment of any sum whatever, beyond the pro rata assessment levied upon each member, as heretofore stated; it being distinctly understood that the amount paid is a gratuity."

*A. S. Hall*, for the plaintiff.

*G. A. A. Pevey, E. B. Gibbs & H. K. Brown*, for the defendant.

BARKER, J.    The right to a seat in the exchange had a pecuniary value, could be transferred under restrictions, and upon the member's death could be disposed of by a committee by sale, the price after extinguishing the claims of other members going to the legal representatives of the deceased.    These characteristics make such rights property, and they are so recognized and dealt with.    *Fish* v. *Fiske*, 154 Mass. 302.    *Currier* v. *Studley*, 159 Mass. 17.    See *Hyde* v. *Woods*, 94 U. S. 523; *Powell* v. *Waldron*, 89 N. Y. 328; *People* v. *Feitner*, 167 N. Y. 1; *Barclay* v. *Smith*, 107 Ill. 349.

The assignment of October 6, 1883, was in terms a pledge of this property to the plaintiff, and being upon a valuable consideration gave the plaintiff a lien.    As the property was not susceptible of delivery the instrument need not be recorded, *Marsh* v. *Woodbury*, 1 Met. 436, and the lien could be enforced without a foreclosure as of a mortgage of personalty.    *Taft* v. *Church*, 162 Mass. 527, 532.    *McKie* v. *Gregory*, 175 Mass. 505. See also *Richardson* v. *White*, 167 Mass. 58.

We are of opinion that it was not intended to give the plaintiff a lien for all possible future indebtedness.    We do not give that meaning to the words " This assignment . . . shall remain in full force until all indebtedness of said Allen S. Weeks to said Bank shall have been paid."    When delivered it was security for the payment of a loan of $4,500 then made.    On November

1, 1894, this loan being unpaid and the assignment still in the possession of the plaintiff, a note of that date for $5,000 was given in renewal of the $4,500 loan and of another loan of $500, and upon that note, which was a joint and several note of both of the makers of the assignment and signed by both was this written statement: " Collateral Security. One membership (or seat) of the Boston Stock Exchange.'' The intention was to continue the lien for the payment of this $5,000 note, and the writing was sufficient for that purpose.

The note of $2,000 was dated May 31, 1890, and was in renewal of part of a note of $2,300 dated December 1, 1884. Neither of these notes mentioned the assignment of October 6, 1883, and there is no writing signed by Weeks which makes it clear that the parties intended the lien to apply to either of these notes. We are of opinion that the $2,000 never has been secured by the lien.

This lien for the debt represented by the $5,000 note was in force on August 8, 1897, when the defendant's intestate died. Administration upon his estate was granted August 19, 1897. Thereafter the assignment was presented both to the officers of the exchange and to the defendant, and the claim was made that the plaintiff was entitled under it to be secured for its indebtedness. The seat was sold with notice of this claim and a large sum was paid over by the exchange to the defendant, who took it with like notice. This change of the property into money, in accordance with rights existing when the lien was created, was like the conversion of mortgaged land into money by a foreclosure sale and the lien subsisted and held the proceeds of the sale. *Western Union Telegraph Co.* v. *Caldwell*, 141 Mass. 489, 492, 493.

As the defendant received the money with notice of the lien and has of it in his hands more than enough to extinguish the debt for which the lien is security, the plaintiff is entitled to a decree unless the lien has been extinguished or the plaintiff's right to its enforcement lost since November 7, 1897, when the money was paid to the defendant.

One contention is that this suit is barred by the short statute of limitations. That statute applies to actions by a creditor of the deceased. Pub. Sts. c. 136, § 9. R. L. c. 141, § 9. The

right of the plaintiff to bring suit upon the note or to prove it as a debt of the defendant's intestate before the commissioners appointed when the defendant represented that estate insolvent is barred by the statutes cited. But the debt and the lien both exist, and this suit is not an action by a creditor to collect his debt, but a suit by an equitable owner to enforce his title. If the money had been received by the defendant's intestate, as in *Western Union Telegraph Co.* v. *Caldwell, ubi supra,* the short statute of limitations would have applied. It was not so received, but was paid to the defendant after his appointment and with notice of the lien. By mingling with the funds of his intestate's estate money to which the plaintiff had an equitable title and which the defendant took with notice of that title, the defendant could neither divest that title nor gain the right to a defence which protects him from the suits of creditors of his intestate. The statute does not protect an administrator in converting to the use of the estate of his intestate the property of another, and is no defence to him against an action to enforce the equitable ownership of another in money which the administrator has received from a sale by the committee of the right of his intestate to a seat in the board, and which the administrator took charged with a lien and having notice of the lien. See *Thayer* v. *Mann,* 19 Pick. 535; *Cunningham* v. *Davis,* 175 Mass. 213, 221.

Nor has the plaintiff lost its right to enforce its lien by laches. The record shows that it gave prompt notice to the defendant both of its debt and of its claim of this lien as security. While no action was brought within the two years during that period the plaintiff was insisting upon its debt. Upon the appointment of commissioners an effort was made to prove the debt before them, and thereafter the plaintiff attempted to collect it by a suit in equity. The only ground for contending that the plaintiff has been guilty of laches is the fact that in *Powow River National Bank* v. *Abbott,* 179 Mass. 336, certain creditors who like the plaintiff relying on the defendant's representations did not sue him within two years have been adjudged to have been chargeable with culpable neglect within the meaning of Pub. Sts. c. 136, § 10. But although originally joined as a plaintiff in that suit this plaintiff had ceased to be a party to it before

the judgment. Nor will the circumstances which bar a recovery under that statute, necessarily support a plea of laches in other proceedings in equity, not brought by creditors of the estate as creditors, but brought like the present suit by an equitable owner of property to enforce his ownership. The question must we think be decided with reference to the usual rules governing the defence of laches, and this defence is not sustained.

There is a finding in the report that as to what took place before the commissioners the plaintiff had not waived its security. We are of opinion that the plaintiff has not lost or waived its right to enforce its lien either by what took place before the commissioners or by its course in joining in the bill in equity under Pub. Sts. c. 136, § 10, brought after the disallowance of its claims by the commissioners. Neither the defendant nor any creditor of the estate other than the plaintiff has been prejudiced by the action of the plaintiff in either of those matters. The whole claim of the plaintiff was disallowed, and it has neither received or been adjudged entitled to receive any payment out of the estate. The oral assent of the plaintiff to the defendant's statement to the commissioners that he considered the assignment ineffectual and would not recognize it and that the plaintiff had been so advised by the secretary of the exchange, was made in good faith and has harmed no one. An unsuccessful attempt to prove as unsecured a secured claim, in the absence of any written waiver, ought not to extinguish the security, no one having been harmed by the attempt.

The defendant's contention founded on the equity jurisdiction of the Probate Court is unsound. The probate and the equity jurisdictions of that court are distinct and its equity jurisdiction is a concurrent one only. Resorting to the probate jurisdiction to prove a claim against the estate of a deceased person, is not an election to choose the equity side of the same court to enforce an equitable ownership to money in the hands of the administrator of the estate against which the claim is offered.

The remaining contention is founded upon the release of the joint makers of the note, and the plaintiff's assent to the disposition of the $5,000 gratuity a part of which only was applied to the note. The gratuity under the rules of the exchange was not a right, but merely a gift from the other members to the widow.

Mass.]

of the deceased member. Whether or not the defendant could complain of the release of a co-maker who was as to his intestate only a surety if there had been no reservation in the release, there was such a reservation of the plaintiff's rights as against all others. *Sohier* v. *Loring,* 6 Cush. 537. *Kenworthy* v. *Sawyer,* 125 Mass. 28. *Beacon Trust Co.* v. *Robbins,* 173 Mass. 261, 271.

> *Decree for plaintiff in the sum of $4,654.26, with interest from January 23, 1899, and for costs.*