**In the Matter of JOSEPH KANNER HAT CO., INC., Bankrupt.**

**Stuart I. LEVIN, Trustee-Appellant,**

v.

**CITY TRUST COMPANY, Petitioner-Appellee.**

No. 663, Docket 72–1475.

United States Court of Appeals, Second Circuit.

Argued June 18, 1973.

Decided July 5, 1973.

Harry M. Lessin, Norwalk, Conn., for appellant.

John P. Chiota, Bridgeport, Conn., for appellee.

Before FRIENDLY, FEINBERG and MANSFIELD, Circuit Judges.

FRIENDLY, Circuit Judge:

This appeal arises from the bankruptcy proceeding of Joseph Kanner Hat Co., Inc. (the company) in the District Court for Connecticut.

A proof of claim filed by City Trust Co. (the bank) alleged that on March 9,

1967, the company had obtained a loan from the bank of $25,000, evidenced by a note endorsed by Ruth and Morton Kanner, which was renewed in June, September and December, 1967; that "on March 9, 1967, the Joseph Kanner Hat Co., Inc., in consideration for the sum of $25,000.00 absolutely assigned, transferred and sold any and all right, title and interest it had, or may have, in and to all the moneys due it from the Norwalk Redevelopment Agency by virtue of a certain claim for reimbursement of compensable moving expenses"; [1] that, although the amount due from the Agency was originally $25,000, it had been reduced, as the result of a payment by the Agency directly to a mover, to $16,500, which the Agency had turned over to the trustee in bankruptcy; [2] that the amount owing by the company to the bank had been reduced by $6,258.48, the remaining balance in a bankbook of Ruth Kanner which had been pledged to

secure a personal loan; [3] and that, in the bank's opinion, the assignment [4] constituted a transfer of "an absolute right to collect the sum due to the assignor-bankrupt from the Norwalk Redevelopment Agency." The trustee answered, alleging sufficiently if inartfully, among other things, that the claim against the Agency was a transaction creating a security interest as defined in Connecticut General Statutes § 42a–9–102(1)(a), Connecticut's version of the Uniform Commercial Code; that the security interest had not been perfected by the filing of a financial statement as required by § 42a–9–302(1); and that the trustee's interest in the fund thus was prior to the bank's by virtue of § 42a–9–301 and § 70, sub. c of the Bankruptcy Act, see 4A Collier, Bankruptcy ¶ 70.51, at 617 (14th ed. 1971).

After a hearing, Referee Trevethan held that the assignment of the claim

---

1. This claim had arisen under Act of Aug. 10, 1965, Pub.L. 89–117, tit. IV, §§ 401, 404(a), 79 Stat. 486, as amended, which authorized the Secretary of Housing and Urban Development to reimburse a local redevelopment agency engaged in an urban renewal project for relocation payments made to business concerns for reasonable and necessary moving expenses. The HUD's regulations, 24 C.F.R. § 3.104(g) (1967), now 24 C.F.R. § 500.104(g), provided that no relocation payment in excess of $10,000 should be made by an agency without its approval.

2. It turned out that the Agency had paid $8,024 to the mover and had retained $1,400 as rent due from the bankrupt, so that the balance paid to the trustee was $15,576.

3. Apparently some document authorized the bank to apply Ruth's bank account to satisfy her obligations as an endorser of the company's note. In any event, no issue has been raised on this score.

4. This reads:
    Know All Men By These Presents:
    That Joseph Kanner Hat Company, Inc., a Connecticut corporation, acting herein by Morton Kanner, its Vice President and Treasurer, hereunto duly authorized, in consideration of the sum of $25,000.00, the receipt whereof is hereby acknowledged, does hereby sell,

assign and transfer to City Trust Company, a Connecticut banking corporation with its principal office in the City of Bridgeport, County of Fairfield and State of Connecticut, its successors and assigns, to its own proper use and benefit, any and all sums of money due or owing to the said Joseph Kanner Hat Company, Inc., or to become due and owing to it, the said assignor, by virtue of a certain claim for reimbursement of compensable moving expenses against the Norwalk Redevelopment Agency in Norwalk, Connecticut, which claim has heretofore been filed by the assignor herein and accepted for processing by said Agency's Relocation Office, on or about February 24, 1967, and the assignor hereby constitutes and appoints the said assignee bank its true and lawful attorney in fact with full power of substitution to ask, demand, sue for and in the name and right of said assignor to collect, receive and give acquittances for the said claim or any part thereof.
    In Witness Whereof I have hereunto set my hand and seal, acting in my capacity as Vice President and Treasurer of the assignor herein this 9th day of March, 1967.
        Joseph Kanner Hat Company, Inc.
        By /s/ Morton Kanner
        Morton Kanner, Vice Pres. and
        Treas. hereunto duly authorized

against the Agency for relocation expenses was an outright sale, not involving the creation of a security interest, and therefore was exempt from any requirement of perfection.[5] He rejected other defenses of the trustee, unnecessary to discuss here, and then directed payment of the $15,576 fund to the bank. The district court, by memorandum order, denied a petition to review.

Although both parties seem to have assumed that the appeal involves "findings of fact" which, under General Order 47 and F.R.Civ.P. 52(a), made applicable to proceedings in bankruptcy by General Order 37, may not be set aside unless clearly erroneous,[6] see Preliminary Draft of Proposed Bankruptcy Rules and Official Forms Under Chapters I to VII of the Bankruptcy Act, Rules 752, 810 (March 1971), we are not at all convinced that this is so. The referee was required to determine not merely what acts the parties performed, as to which indeed there was little dispute, but what the legal consequences were. In a case somewhat akin to this, although arising in a different context, the Fifth Circuit has decided that a finding that a bank held municipal bonds in the course of sale to dealers as an owner rather than a secured lender was not protected by the "unless clearly erroneous rule," American Nat'l Bank of Austin v. United States, 421 F.2d 442, 451 (5 Cir.), cert. denied, 400 U.S. 819, 91 S.Ct. 36, 27 L.Ed.2d 46 (1970). As the same court had earlier said:

Obeisance to the clearly erroneous rule must yield when the facts are undisputed and we are called upon to reason and interpret.

United States v. Winthrop, 417 F.2d 905, 910 (5 Cir. 1969). In a bankruptcy case, In re Hygrade Envelope Corp., 366 F.2d 584, 587–589 (2 Cir. 1966), although recognizing some division of opinion among the circuits, we held that the "unless clearly erroneous" rule did not protect a concurrent "finding" by a referee and a district judge that a creditor did not have reasonable cause to believe in a debtor's insolvency. We there stated that, when the issue is a trial judge's "application of a legal standard to facts undisputed or reasonably found, reversal is not limited to results that are 'clearly erroneous'; it is enough that the appellate court should be convinced, as we are here, that the result does not jibe with the applicable rule of law." 366 F.2d at 588 (footnote omitted).[7] We adhere to that view, without intimating that our decision in this case would be different if the "unless clearly erroneous" rule applied.

The definition section in the U.C.C. as adopted in Connecticut, § 42a–1–201(37), says simply that

"Security interest" means an interest in personal property or fixtures which secures payment or performance of an obligation.

Section 42a–9–102(2) adds that Article 9, with its requirement of perfection of a security interest to prevent subordination to the rights of a trustee in bankruptcy, "applies to security created by contract" including, among other things, "assignment." It is true, as Professor

---

5. Section 42a–9–102(1) states that Article 9 applies to any transaction intended to create a security interest "in personal property or fixtures including goods, documents, instruments, general intangibles, chattel paper, accounts or contract rights," as well as "to any *sale* of accounts, contract rights or chattel paper" (emphasis added). The referee determined, and we agree, that the claim against the Redevelopment Agency was a "general intangible," see § 42a–9–106; Coogan, Intangibles as Collateral Under the Uniform Commercial Code, 77 Harv. L.Rev. 997, 1001–06 (1964). An outright sale of the claim would therefore not

have been governed by the requirements of Article 9.

6. This had been the rule in bankruptcy proceedings long prior to the application of the Federal Rules of Civil Procedure, see 2 Collier, Bankruptcy ¶ 25.30 [2.1], at 1023–24 (14th ed. 1971).

7. See S. Weiner, The Civil Nonjury Trial and the Law—Fact Distinction, 55 Calif. L.Rev. 1020 (1967), approving the general position of the Second Circuit on what constitutes a finding of fact, as well as the specific holding in *Hygrade. Id.* at 1042–43.

Gilmore has written, that the definition in § 1–201(37) of the U.C.C. "is essentially a declaration of faith." 1 Security Interests in Personal Property § 11.1, at 334 (1965). But, as he also points out, this course was feasible for the draftsmen because of the long-standing rule "that the courts will determine the true nature of a security transaction, and will not be prevented from exercising their function of judicial review by the form of words the parties may have chosen." *Id.* § 2.6, at 47; see *id.* § 11.1, at 335. Long before adoption of the U.C.C. it had become settled that, when A gives B a bill of sale of personal property and later claims this was a loan secured by mortgage, the courts would listen to him; "the parol evidence rule has opened like a leaky sieve to allow A to vary, contradict and explain" a bill of sale. *Id.* § 2.6, at 48. With the advent of recording statutes, this principle was applied for the benefit not simply of purported sellers but also of their creditors. *Id.* at 49–50.

■■■ Here the evidence that the assignment of the relocation claim was taken as security for the $25,000 loan was overwhelming, and the parol evidence rule clearly did not bar its receipt. See, *e. g.*, Allen v. Home Nat. Bank, 120 Conn. 306, 180 A. 498 (1935) (assignment of an insurance policy absolute in form may be shown to have been intended as security); 4 Corbin, Contracts § 881, at 543 (1951); 3 Williston, Contracts § 431, at 175–76 (3d ed. 1960). The assignment was delivered simultaneously with the loan of $25,000 evidenced by a promissory note carrying two endorsements. A bank officer testified that any payment received under the assignment would be applied to reduce the amount of the loan; that, on the other hand, if payments had been made by the maker or endorsers on account of the loan, any excess over the amount of the loan received on account of the assignment would have been returned to the company; that the bank treated the assignment as a method of payment of the loan; and that the assignment was a source of payment of the loan if the parties to the note did not pay it. While the bank and the Kanners may have believed that the relocation payment would suffice to take care of the loan, that did not alter the fundamental nature of the transaction. The acts of the bank confirm that the intention was just what its officer stated. Recognizing that $25,000 was the maximum amount reimbursable by HUD for moving expenses, see 24 C.F.R. § 3.109 (1967), it required the note to be personally endorsed by the Kanners, and, when less than the full $25,000 was received, the bank attempted to realize on the note by attaching property of the endorsers and by applying the $6,258.48 in Ruth Kanner's account. If the account had contained four thousand dollars more, the bank by its own admission would not be claiming the totality of the fund here at issue,[8] compare Allen v. Home Nat. Bank, *supra,* 120 Conn. 306, 180 A. 498 (assignee for security may collect only up to the amount of the secured debt); 4 Corbin, Contracts, *supra,* § 881, at 541–42 ("[a]s long as the debt has not been paid in full, the assignee for security may collect the assigned claim and apply the proceeds in satisfaction of the debt secured; the balance, if any, belongs to the assignor"). Finally, despite the "absolute" assignment of the entire claim, the bank did not protest when the Agency paid part of the $25,000 to the mover and kept part for itself, see fn. 2. If this was not an assignment for security, we do not know what would be. Compare Bacon v. Kienzel, 21 A. 37, 39 (N.J. Ch. 1891), where an assignment of insurance policies was held to be for security, because there was no evidence that the assignor's debt was in any way reduced on account of the assignment; and In re Boughner, 8 U.C.C.Rep.Serv. 144, 149 (W.D.Mich.1970), where a ref-

8. The amount owing on the $25,000 loan after application of the bank account was $18,741.52. After deductions, the Re-development Agency's payment was $15,-576, see fn. 2.

eree in bankruptcy found an assignment to be for security when the amount to be realized on the assigned claims was uncertain, the assignee required additional security, and there was no indication that the assignee was surrendering his right to full payment of the debt.

Since the assignment represented a security interest that was not perfected by the filing of a financial statement as required by Connecticut General Statutes § 42a–9–302(1), the trustee was right in asserting that, pursuant to § 42a–9–301 and § 70, sub. c of the Bankruptcy Act, his interest in the fund was entitled to priority over the claim of the bank.

Accordingly the order denying the petition to review is reversed, and the district court is instructed to remand the case to the referee for entry of an order denying the bank's petition for the fund and declaring this to be a part of the bankrupt estate.