In re Costas TASLIS d/b/a Brown Bag
Convenient Store, Debtor.

Bankruptcy No. 84–00494–JG.

United States Bankruptcy Court,
D. Massachusetts.

April 9, 1984.

Nina M. Parker, Satran, Reade & Marino, Boston, Mass., for petitioner.

James P. Hayes, Robert J. Owens Associates, Boston, Mass., for respondent.

## MEMORANDUM

JAMES N. GABRIEL, Bankruptcy Judge.

Before the Court is the Motion of Christy's Market, Inc. ("Christy's") for Relief from Stay to enter and repossess the debtor's interest in his business premises. The debtor Costas Taslis ("Taslis" or "the debtor") filed an Answer and a preliminary hearing was held on July 26, 1984. Based upon the pleadings, testimony, and documentary evidence, the Court finds as follows.

Christy's seeks relief from stay to enter and take possession of the debtor's business premises located at 1349 Main Street, Reading, Massachusetts where he operates a convenience and fast-food store. Christy's had sold the business, equipment and inventory to Taslis in May 1981 for an approximate price of $37,000. In connection with the sale, Christy's assigned Taslis the lease of the store. To finance the purchase Taslis gave Christy's a promissory note in the sum of $32,065.57. To secure the obligation Christy's and Taslis entered into a security agreement concerning the inventory and Taslis granted Christy's a collateral reassignment of the lease.

Several of the pertinent provisions of the various agreements are as follows. The promissory note provides that it is due upon a failure to pay a due installment for fifteen days, or any other breach which continues for thirty days. The terms of the collateral assignment agreement provided that Taslis assigned all his right, title, and interest in the lease to Christy's until such time as the indebtedness shall be paid in full, and that the purpose of the assignment was to secure the indebtedness.

As long as no default existed, Taslis was entitled to undisturbed possession of the assigned premises; upon payment, the collateral assignment of the lease was to be terminated. With respect to the secured party's rights upon default, the collateral assignment agreement provided that upon the occurrence of any default which remains uncured, Christy's may terminate Taslis' rights and take possession of the leased premises either by actual physical possession and/or by written notice delivered personally or by certified or registered mail to Taslis.

The agreement also provided that any default in the note could be cured by payment in full of past due amounts. The agreement does not contain a time period for exercise of the right to cure. Concerning notice, the assignment stated that notice, to be sufficient, must be sent to the party to receive the notice, at his address designated in the agreement, in writing sent by certified or registered mail, postage prepaid, return receipt requested. Taslis and Christy's were the sole signatories to the assignment.

Taslis fell behind on the required weekly payments to Christy's in mid-1982. On December 19, 1983, Christy's attorney sent a letter to Taslis by certified mail, return receipt requested, notifying him that the Note was in default because payments had not been made since June 30, 1982. The letter recited that the total obligation owed was $34,684 and demanded payment of this amount. The letter further stated: "... unless payment is received within 15 days from your receipt of this letter, Christy's Market, Inc. will take steps to enforce all its remedies .... against you." A copy of this letter was sent to Taslis' Attorney, Theodore Alevizos. Taslis did not make the requested payment.

On April 5, 1984 Christy's attorney sent a letter by regular mail to Attorney Alevizos notifying him that Taslis was considered a trespasser, demanded possession of the premises, and notified him that Christy's intended to take possession of the premises if Taslis did not surrender the

premises by April 11, 1984. A copy of this letter was mailed to Taslis by regular mail on April 13, 1984. He did not receive it until after that date.

The debtor filed his Chapter 11 petition on April 9, 1984. Christy's argues that as a matter of law it is entitled to relief from stay to enter and gain possession of the assigned premises. It contends that before the filing of the petition it exercised the collateral assignment by the letter dated April 5, 1984 and that the debtor's interest in the leasehold was terminated by the notice.

The issues presented by the Motion for Relief from Stay are: whether Christy's properly exercised the collateral assignment of the lease prior to the filing of the bankruptcy petition?; and, whether Christy's notice of termination of the collateral assignment eliminated the debtor's interest in the leasehold as an asset of the estate making the automatic stay inapplicable to Christy's enforcement of its interest in the leasehold. It is necessary, therefore, to determine the nature of and method of enforcement of a collateral assignment of a lease under Massachusetts law. The position of the secured party requires an interpretation of the scope of the automatic stay under 11 U.S.C. Section 362(a)[1] and the scope of the debtor's property interests as of the date of the filing of the bankruptcy as the term is defined in 11 U.S.C. Section 541(a)(2).[2]

 A debtor's right to redeem property which exists on the date of the filing of the bankruptcy petition is property of the estate within the meaning of 11 U.S.C. Section 541 which is protected against enforcement by the automatic stay of Section 362. *In Re Bialac*, 712 F.2d 426 (9th Cir. 1983); *In Re Martinson*, 26 B.R. 648, 10 B.C.D. 163 (D.N.D.1983). Even if the secured party had properly seized property prior to the filing of the petition, as long as the debtor retained a redemption right as of the commencement of the case, the debtor may compel a turnover of the seized property. *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983). Therefore, if the debtor has a right to redeem property from the secured party under applicable state law, then this property right is protected by the automatic stay. *L. King Collier on Bankruptcy*, Par. 541.08, at 541–46 (15th ed. Supp.1983). However, if a secured party has properly and completely extinguished the interest of the debtor prior to bankruptcy, the redemption right does not pass into the debtor's estate.

 Generally, a collateral assignment of an interest in property is a secured transaction whereby a borrower assigns his interest in property to a lender to secure performance of an obligation. *James Talcott, Inc. v. Wilcox*, 308 F.2d 546 (5th Cir. 1982); *In Re OPM Leasing Services, Inc.*, 30 B.R. 642, 10 B.C.D. 852, 855 (Bankr.S.D. N.Y.1983). The assignee for security (the secured party) has the right to collect the assigned claim and apply the proceeds in satisfaction of the secured debt; any surplus belongs to the assignor (the borrower). *In Re Joseph Kanner Hat Co., Inc.*, 482 F.2d 937 (2d Cir.1973). Massachusetts law is in accord with the view that an assignment for collateral is not an absolute transfer, but rather gives rise to a lien in favor of the assignee. *See, e.g., Nashua Savings Bank v. Abbott*, 181 Mass. 531, 63 N.E. 1058 (1902). While a true assignment of a tenant's interest in a leasehold divests the lessee of any interest in the property, under a collateral assignment of a lease for security the borrower tenant usually re-

---

**1.** 11 U.S.C. Section 362(a) provides in pertinent part: .... "a petition ... operates as a stay .... of .... (3) any act to obtain possession of property of the estate or of property from the estate; (4) any act to create, perfect or enforce any lien against property of the estate;"

**2.** 11 U.S.C. Section 541(a) provides in pertinent part: "(a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located: (1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case."

tains possession, and has the right to discharge the assignment upon payment of the obligation. *See Gorin v. Stroum,* 288 Mass. 6, 192 N.E. 90 (1934); *Providence F.R. & N. Steamboat Co. v. City of Fall River,* 187 Mass. 45, 72 N.E. 338 (1904).

█ The secured party, Christy's, argues that the collateral assignment agreement with Taslis vested full and complete legal title to the leasehold in Christy's, citing the Supreme Judicial Court's statement in *Kirby v. Goldman,* 270 Mass. 444, 170 N.E. 414 (1930): "although made as collateral security, the collateral vested a title in him." *Id.* at 447, 170 N.E.2d at 415. The Court's conclusion in *Kirby v. Goldman* does not alter the well-settled status of an assignee for security as a lienholder under Massachusetts law. In fact, the case did not deal with the powers of a secured party holding a collateral assignment of a lease, but rather his liability for the assignor/lessee's rent payments. Moreover, the decision was subsequently modified by the decision of *Gorin v. Stroum,* 288 Mass. 6, 192 N.E. 90 (1934) where the Court stated: "... an assignee who holds title by any assignment without a deed ... is not liable without some act of entry or change of actual possession," 288 Mass. at 11, 192 N.E. at 92.

Therefore, I reject Christy's contention that it had absolute title to the debtor's leasehold simply by virtue of the collateral assignment. Christy's also contends that by reason of its declaration of termination of the collateral assignment it had extinguished the debtor's interest in the lease before the filing of the petition. This argument requires an examination of the method(s) by which a secured assignee exercises a collateral assignment of a lease so as to cut off the tenant's interest.

█ Enforcement of a collateral assignment of a lease is not governed by the remedies set forth in Article 9 of the Uniform Commercial Code, M.G.L. c. 106 sections 9–501, 9–503 [3] because an assignment

of a lease for security is a transfer of an interest in and a lien on real estate, and thus is exempted from the provisions of Article 9. M.G.L. c. 106 section 9–104(f).

Based upon my research it appears that Massachusetts law has not established a specific procedure for enforcement of a collateral assignment of a lease. The cases have, however, recognized the following methods without commenting on their necessity: the judicially-approved sale, *Gorin v. Stroum,* 288 Mass. 6, 192 N.E. 90 (1934) and entry and possession. *Freedman v. Bloomberg,* 225 Mass. 491, 114 N.E. 827 (1917). The contract between the parties may also provide the stipulated method of enforcement which will supersede otherwise applicable remedies.

█ In the present case it is not necessary to determine what steps Massachusetts law requires to take to terminate a collateral assignment, because I find that Christy's did not comply with the notice-terms of its agreement. Article 2.5 of the collateral assignment provides upon a default and until a default is cured, Christy's may elect "to terminate Assignee's (Taslis') rights under the assignment of lease and enter and take possession of the leased premises; either (a) by actual physical possession and for (b) by written notice served personally upon or sent by registered mail to the Assignee, as the Assignor (Christy's) may elect without further authorization, notice or demand." Thus, according to this clause, Taslis had the opportunity to cure by full payment until Christy's terminated his rights by either entry or proper notice of termination. It is undisputed that Christy's did not enter the premises and it relies solely on its two letters as its notice of termination. The first letter dated December 19, 1983, which was sent to the debtor Taslis by certified mail cannot be considered a notice of termination. It was merely a notice of default and a demand for payment within fifteen days. The letter dated April 5, 1984 purported to be a notice of termination but was sent to Theo-

---

**3.** Under these sections a secured party enforces his rights to the collateral by repossession,

M.G.L. c. 106 section 9–503, or by any available judicial procedure. M.G.L. c. 106 section 9–501.

dore Alevizos not to the debtor, and was not by certified mail. In addition, Taslis testified that he did not receive a copy of the letter until April 14, 1984 and the April 13, 1984 postmark on the envelope corroborates his testimony. Because Christy's did not terminate the assignment in accordance with the contractual terms the April 5 notice was ineffective to terminate the debtor's right to cure his defaults. Since this was valuable equitable interest of the debtor which he possessed on the date of the filing, the automatic stay was applicable to prevent Christy's from further proceeding to terminate the collateral assignment.

For these reasons, the moving party is not entitled to relief from stay as a matter of law, and the Motion is denied at this preliminary stage. The final hearing on Christy's Motion for Relief from Stay shall be held on August 24, 1984 at 2:00 P.M.