783 P.2d 475

The **FEDERAL DEPOSIT INSURANCE CORPORATION, Plaintiff–Appellee,**

v.

**ALTO CONSTRUCTION COMPANY, INC., et al., Defendants–Appellants.**

**No. 18320.**

Supreme Court of New Mexico.

Dec. 5, 1989.

**166**

Hawthorne & Hawthorne, P.A., Richard A. Hawthorne, Ruidoso, for defendants-appellants.

Underwood, Dutton & Griffin, Ltd., Don Dutton, Ruidoso, for plaintiff-appellee.

## OPINION

RANSOM, Justice.

Defendants George Cliff (Cliff), Thomas Deason and George Slaughter appeal a summary judgment entered in favor of plaintiff Federal Deposit Insurance Corporation (FDIC) on a claim for a $152,424.75 deficiency judgment, plus interest, arising from a mortgage foreclosure. We affirm.

Cliff, Deason and Slaughter, along with Hal Cliff, were the four shareholders of Alto Construction Company, a New Mexico corporation principally involved in construction of residential homes in Ruidoso, New Mexico. Hal Cliff was the president of the corporation and ran its day-to-day operations until the latter part of 1985. He is not a party to the present appeal.

In November 1982, Deason executed an unlimited guaranty in favor of First City National Bank[1] (bank) guaranteeing the indebtedness of Alto Construction Company. In May 1984, Cliff and Slaughter executed identical guaranties in favor of the bank. The guaranties covered "any and all existing and future indebtedness and any liability of any kind, nature, [or] character ... from the debtor [Alto Construction] to bank, howsoever and whensoever created,

or advised, or evidenced, or acquired, including but not limited to those as maker, drawer, principal, surety, or guarantor * * * *"

Sometime prior to June 1, 1984, purportedly without the prior knowledge of the other shareholders of Alto Construction, Hal Cliff entered into a partnership on behalf of the corporation with several other individuals and business entities. The resulting general partnership was named "Westsun Group." Westsun's purpose was to undertake real estate investments, and it borrowed $178,562.50 from the bank to purchase a parcel of real estate in Ruidoso. To secure the note, Westsun gave to the bank the mortgage in question. Additionally, various Westsun partners gave personal guaranties on the note. Hal Cliff also gave his personal guaranty. The appellants did not directly participate in these transactions, nor did they give guaranties specifically to secure the Westsun note.

Westsun subsequently defaulted on the promissory note. In addition, Alto Construction defaulted on three other notes held by the bank. In August 1985, the bank sent a letter to appellants and Alto Construction demanding payment of the Westsun note. Later that month, Deason and Slaughter met with the president of the bank to discuss the Westsun loan and the other outstanding obligations of Alto Construction. At this meeting, Deason and Slaughter acknowledged that the Westsun note was an obligation of Alto Construction, but the bank stated that it intended to seek repayment only from those persons who signed guaranties on behalf of Westsun. The bank entered into an agreement with Deason and Slaughter to restructure the remaining three notes, and Deason and Slaughter executed new guaranties to cover those notes. The Westsun loan was not covered under this agreement or the new guaranties.

In December 1985, FDIC closed the bank and began liquidation of its assets. In November 1986, FDIC filed suit against

---

1. First City National Bank changed its name, first to Moncor Bank, then to First National Bank of Lincoln County.

Westsun, the partners of Westsun, including Alto Construction, and various individuals whose guaranties were alleged to cover the Westsun note, including Cliff, Deason, and Slaughter. The suit sought foreclosure of the mortgage on the Westsun property and money damages. In May 1987, the parties agreed there were no legal defenses to the foreclosure suit, and the court entered a judgment of foreclosure on the property. The May judgment reserved the court's jurisdiction on the issue of individual liability for any deficiency remaining after the foreclosure sale. It also provided that such issues, along with various counterclaims and cross-claims were "reserved * * * for trial by jury at a date to be set by the Court in the future." In October 1987, however, the court granted FDIC's motion for summary judgment on the individual liability of defendants, including Cliff, Deason and Slaughter.

Appellants argue the court erred for two reasons in granting summary judgment. First, they argue, genuine issues of material fact remained regarding whether they intended the facially unlimited guaranties executed prior to the formation of Westsun to secure Alto's obligations as a partner of Westsun. Second, they argue, the May 1987 judgment of foreclosure was a stipulated judgment, and the trial court was bound to enforce its terms by allowing the issue of appellant's individual liability to be tried by a jury.

*Summary judgment proper under federal law.* Summary judgment should be granted when no genuine issue of material fact exists that requires a jury trial. SCRA 1986, 1-056(C). When a party makes a prima facie showing of no genuine issue of material fact, the nonmovant has the burden to come forward with affidavits or other documentation sufficient to raise a reasonable doubt that such an issue exists. *Goodman v. Brock,* 83 N.M. 789, 498 P.2d 676 (1972).

In response to FDIC's motion for summary judgment, appellants presented affidavits stating that, at the time each executed the facially unlimited guaranties to the bank, they intended the guaranties to cover only those obligations of Alto Construction that related to its home building activities. In their brief in chief, appellants argue these affidavits created an issue of fact regarding whether there was a meeting of minds on the extent of the guaranties. Since guaranties are a species of contract, they argue, if there was no meeting of minds over the subject of financial obligations unrelated to Alto Construction's home building activities, then the guaranties do not cover such activities,[2] and FDIC is precluded, as successor in interest of the bank, from enforcing them in this case.

At oral argument, appellants reframed their argument, alleging the bank understood and agreed that the guaranties only would cover Alto Construction's home building activities. We note that the statements of the bank president at the August 1985 meeting to restructure the corporation's debt and the resulting agreement could be interpreted as indicating the existence of such a prior understanding. Nonetheless, we conclude that summary judgment was proper under applicable federal law.

The Federal Deposit Insurance Act, 12 U.S.C. Section 1823(e), provides:

No agreement which tends to diminish or defeat the right, title or interest of the Corporation [FDIC] in any asset acquired by it under this section, either as security for a loan or by purchase, shall be valid against the Corporation unless such agreement (1) shall be in writing, (2) shall have been executed by the bank and the person or persons claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the bank, (3) shall have been approved by the board of

---

**2.** There is no claim that the guaranties were of no legal effect by reason of a failure in mutuality of intent. *Cf. Langley v. FDIC,* 484 U.S. 86, 91, 108 S.Ct. 396, 402 (fraud inducing a party to sign an instrument without knowing its true nature or contents would render that instrument void, and such a defense can be raised against FDIC in a suit to enforce said instrument).

directors of the bank or its loan committee, which approval shall be reflected in the minutes of said board or committee, and (4) shall have been, continuously, from the time of execution, an official record of the bank.

One policy animating this section is to allow both federal and state bank examiners to rely completely on a bank's records when evaluating its assets pursuant to liquidation of assets or to providing financing for purchase of assets and liabilities by another bank.[3] *Langley v. FDIC*, 484 U.S. 86, 91, 108 S.Ct. 396, 401, 98 L.Ed.2d 340 (1987). The latter sort of evaluations "must be made 'with great speed, usually overnight, in order to preserve the going concern value of the failed bank and avoid an interruption in banking services.'" *Id.* (quoting *Gunter v. Hutcheson*, 674 F.2d 862, 865 (11th Cir.), *cert. denied*, 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982)). Such evaluations would be impossible if "seemingly unqualified notes * * * are in fact subject to undisclosed conditions." *Id.* Because of such considerations, certain defenses that may be available to a debtor if sued by a bank are not available against FDIC. In short, FDIC "does not simply step into the private shoes of the local bank * * * *" *FDIC v. Tito Castro Constr. Co.*, 548 F.Supp. 1224, 1226 (D.P.R.1982), *aff'd*, 741 F.2d 475 (1st Cir.1984). *See also, FDIC v. Cardinal Oil Well Serv. Co.*, 837 F.2d 1369 (5th Cir.1988) (in light of the unequivocal language in guaranties securing corporation's debts, court would not look to extraneous evidence of intent).

In *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), the Court held that a debtor could not assert against the FDIC a defense of no consideration based on an undisclosed side agreement with the failed bank not to enforce a particular obligation, because such an agreement would tend to mislead bank-

ing authorities. Similarly, the *Langley* Court reasoned the defense that a mortgage note was subject to an unwritten condition precedent could not be used to defeat a claim brought by FDIC subsequent to its appointment as receiver for a failed bank, because "one who signs a facially unqualified note subject to an unwritten and unrecorded condition upon its repayment has lent himself to a scheme or arrangement that is likely to mislead the banking authorities." 484 U.S. at 93, 108 S.Ct. at 402.

Appellants assert that the understanding they had with the bank limiting the scope of the facially unlimited guaranties does not constitute an "agreement" within the meaning of Section 1823(e) because there was no intent to defraud FDIC. Such an intent is not necessary to the application of the rule in question. The *D'Oench* court held that a debtor could not assert a "secret" agreement as a defense against suit by FDIC even when there was no intent to deceive banking authorities. 315 U.S. at 457–58, 62 S.Ct. at 679–80.

■ We conclude that the unwritten condition alleged by appellants, whether a secret agreement with the bank or their own unilateral understanding, does not provide a defense against FDIC. Like the unwritten agreements considered in *D'Oench, Duhme & Co.* and *Langley*, appellants' asserted defense would tend to diminish or defeat the interest of FDIC and mislead banking authorities as to the true status of a bank's assets. We also note that, as the August 1985 agreement restructuring Alto Construction's debt with the bank took place subsequent to the execution of the original guaranties, it also cannot be raised as a defense against FDIC under 12 U.S.C. Section 1823(e)(2). Therefore, we hold the claim that the guaranties were intended only to cover the home building activities of Alto Construction did not give rise to an issue of material fact.

---

**3.** These policies were first recognized as implicit in federal banking law by the Supreme Court prior to the passage of Section 1823(e). *See D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 457–62, 62 S.Ct. 676, 679–82, 86 L.Ed. 956 (1942). The FDIC need not show reliance in fact as a condition precedent to application of the prophylactic rule announced in *D'Oench*

and now codified by Section 1823(e). *Id.* at 458, 62 S.Ct. at 679–80; *Langley v. FDIC*, 484 U.S. at 93–95, 108 S.Ct. at 402–03 (FDIC entitled to rely on face of note and collateral mortgage, notwithstanding that FDIC had actual notice of the allegations of fraudulent oral warranty made by bank prior to FDIC's appointment as receiver upon bank's closure).

*Stipulated judgment did not necessitate a jury trial.* Assuming that the May 1987 judgment was a "stipulated judgment" and hence a contract that the trial court was obliged to enforce, we nonetheless hold the court acted correctly in refusing to conduct a jury trial on the issues here appealed. *See Owen v. Burn Constr. Co.*, 90 N.M. 297, 563 P.2d 91 (1977) (stipulated judgment is a contract between the parties). The power of the parties to enter into a binding contract does not extend to obligating the trial court to act in contravention of the rules of civil procedure, under which we have held summary judgment was appropriate in this case. Moreover, we do not construe the language of the May judgment as implying such an obligation. The judgment expressly reserved *the court's jurisdiction* on the question of individual liability, and reserved these issues for jury trial *to be set by the trial court at a future date.* We construe this language to imply that the trial court reserved for itself the power to decide, as provided by the rules of civil procedure, *if and when* a jury trial would be necessary.

For the foregoing reasons, the judgment is affirmed.

IT IS SO ORDERED.

SOSA, C.J., and MONTGOMERY, J., concur.