844 P.2d 810

**RESOLUTION TRUST CORPORATION, Receiver for American Federal Savings and Loan Association, Plaintiff–Appellee,**

v.

**John C. BINFORD, Julie G. Binford, Joe F. Fritz, Darilyn W. Fritz and Crossroads West Limited Partnership, a New Mexico limited partnership, Defendants–Appellants.**

No. 19731.

Supreme Court of New Mexico.

Dec. 17, 1992.

Victor R. Marshall & Associates, P.C., Victor R. Marshall, Joel K. Jacobsen and Sager, Curran, Sturges & Tepper, Deborah Rupp Goncalves and Matt Holt, Albuquerque, for appellants.

Michael H. Krimminger, Washington, D.C. for appellee.

## OPINION

RANSOM, Chief Justice.

The trial court dismissed counterclaims to a collection and foreclosure action brought by Resolution Trust Corporation (RTC), and we granted this interlocutory appeal under SCRA 1986, 12–203. The court certified two issues for appeal: (1) whether it was proper to dismiss the coun-

terclaims because federal courts have exclusive subject-matter jurisdiction over claims against RTC as receiver, and (2) whether, in connection with a leasehold that has been assigned as security for an indebtedness, the court properly denied a motion to cancel notice of lis pendens, and incidentally ruled that an action to foreclose on such a leasehold may be prosecuted as though it were a foreclosure on a real estate mortgage. We hold the trial court had jurisdiction over the counterclaims and we reverse the order of dismissal. We affirm authorization of the notice of lis pendens.

*Uncertified issues.* We do not reach uncertified issues raised by the parties in their briefs, such as whether the dismissal of all or part of the counterclaims nonetheless was required because of 28 U.S.C. § 1346(b) (1988) (exclusive jurisdiction of federal courts over certain tort claims against the federal government for money damages), the *D'Oench, Duhme* doctrine, or 12 U.S.C. § 1823(e) (Supp. II 1990).[1] Further, appellants specifically have disclaimed on appeal any right to recovery beyond recoupment in an amount equal to the RTC claim. We do not decide whether the appellants' counterclaims satisfy the elements of a recoupment claim, nor do we preclude the trial court's consideration of issues, such as counterclaims for damages beyond recoupment, not decided by us on interlocutory appeal. In light of our conclusion that appellants may proceed with their counterclaims, we do not address their alternative request that this Court issue a stay of the foreclosure action.

*Facts and proceedings.* John C. Binford and Joe F. Fritz are general partners of Crossroads West Limited Partnership, the lessee of certain property in downtown Albuquerque. That property is in turn subleased to Walgreen's Drugstore. In December 1984, Binford and Fritz, and their wives, in their individual capacities as ac-

---

[1] In *FDIC v. Alto Constr. Co.,* 109 N.M. 165, 783 P.2d 475 (1989), this Court recognized that under *D'Oench, Duhme & Co. v. FDIC,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), a debtor cannot assert as a defense against the government agency any unwritten and unrecorded collateral agreement conditioning the rights of the lending institution. Section 1823(e) was enacted in 1950 and similarly declares unenforceable against the FDIC any agreement that tends to diminish the rights of the FDIC unless the agreement meets certain statutory conditions.

commodation parties, signed a Crossroads note payable to American Federal Savings and Loan Association in the principal amount of $310,000. As security for the note, Binford and Fritz pledged their partnership interest in Crossroads by an instrument entitled "Assignment of General Partners Interest in Limited Partnership as Security," and also granted to American Federal a mortgage on the leasehold. Binford and Fritz allege that American Federal represented, at the loan closing, that a mortgage was necessary to obtain title insurance, but that American Federal would never foreclose on it. American Federal became insolvent and was placed in the conservatorship, and later the receivership, of RTC.

Answering the collection and foreclosure action brought by RTC, styled as an equitable proceeding for foreclosure, Binford and Fritz asserted counterclaims based on actions of both American Federal and RTC. The counterclaims contain eight counts including: (1) negligence in protecting the security, (2) negligence in failing to perform duties as a general partner of Crossroads pursuant to the assignment, (3) breach of contract, (4) breach of fiduciary duty, (5) impropriety of a notice of lis pendens, (6) interference with prospective contractual relations, (7) prima facie tort, and (8) abuse of process. RTC moved to dismiss the counterclaims, and the court ordered them dismissed for lack of subject-matter jurisdiction. In the same order, the court denied the motion of Binford and Fritz to cancel a notice of lis pendens recorded by RTC in the real estate records of Bernalillo County. The court specifically found that "leaseholds are encompassed by the New Mexico real estate conveyancing statutes and are properly subject to mortgages." The court concluded, therefore, that RTC was entitled to prosecute its action as though it were a foreclosure on a real estate mortgage.

*Issue I: Subject-matter jurisdiction over claims relating to the assets of a financial institution for which RTC has been appointed receiver.* Congress may give to the federal courts exclusive jurisdiction over the subject matter of federal legislation. *Tafflin v. Levitt*, 493 U.S. 455, 459, 110 S.Ct. 792, 795, 107 L.Ed.2d 887 (1990); *Claflin v. Houseman*, 93 U.S. 130, 137, 23 L.Ed. 833 (1876). State courts are presumed to have jurisdiction over federal questions concurrent with the federal courts unless Congress intended exclusive federal jurisdiction. *Tafflin*, 493 U.S. at 459, 110 S.Ct. at 795. Such intent may be established "by an explicit statutory directive, by unmistakable implication from legislative history, or by a clear incompatibility between state-court jurisdiction and federal interests." *Gulf Offshore Co. v. Mobile Oil Corp.*, 453 U.S. 473, 478, 101 S.Ct. 2870, 2875, 69 L.Ed.2d 784 (1981); *see also Tafflin*, 493 U.S. at 459, 110 S.Ct. at 795 (stating that exclusivity may be provided either explicitly or implicitly). The specific issue before us is whether Congress intended to deprive state courts of jurisdiction over state-law counterclaims against RTC in an action instituted before RTC was appointed receiver of a failed financial institution. The parties have given us no direction as to whether Congress can divest state courts of subject-matter jurisdiction over state law claims. For purposes of this opinion, we assume that Congress has that power, and that the standards are the same as those for divesting state courts of their presumed subject-matter jurisdiction over federal causes of action.

*—Statutory directives asserted by RTC.* In 1989, Congress enacted the Financial Institutions Reform, Recovery, and Enforcement Act (FIRREA), Pub.L. No. 101–73, 103 Stat. 183 (1989), amending portions of Title 12 of the United States Code relevant to this appeal.[2] Congress has set forth a detailed procedure for the mandatory filing, consideration, and adjudication of administrative claims against insolvent financial institutions in federal receivership. 12 U.S.C. § 1821(d)(3)–(10) (Supp. II 1990). RTC argues that, except for that portion of

---

2. FIRREA is a complex law enacted, *inter alia*, to provide "funds from public and private sources to deal expeditiously with failed depository institutions." 12 U.S.C. § 1811 note (Supp. II 1990) (purposes of 1989 amendment).

§ 1821(d)(6)(A) which permits a claimant to file suit in *federal* court for a *de novo* judicial determination *after* initial determination of a claim in the *administrative claims* process, FIRREA provides:

> [N]o court shall have jurisdiction over—
>
> (i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or
>
> (ii) any claim relating to any act or omission of such institution or the Corporation as receiver.

12 U.S.C. § 1821(d)(13)(D).

RTC asserts that all eight counts of the counterclaim fall within the FIRREA provisions for exclusive jurisdiction in federal court. While federal courts may have exclusive jurisdiction over such claims filed for *de novo* judicial determination after exhaustion of the administrative procedures set forth in § 1821(d), we find neither explicit nor implicit application of such exclusivity to state-court actions brought before the appointment of the receiver.

■ *—Subject-matter jurisdiction tested as of time of filing. —Exclusivity applicable only to RTC as receiver.* It is the well-settled rule that subject-matter jurisdiction is tested as of the time of the filing of the complaint. *Praxis Properties, Inc. v. Colonial Sav. Bank,* 947 F.2d 49, 63 n. 14 (3d Cir.1991). Subject-matter jurisdiction over counterclaims therefore should be tested no later than when first filed and, at least for compulsory counterclaims, perhaps at the time of the filing of the complaint.

This lawsuit was filed by RTC in its capacity as conservator. On June 1, 1990, Binford and Fritz filed their answer and counterclaims. To test subject-matter jurisdiction, all subsequent amended counterclaims asserting claims or defenses arising out of the conduct, transaction, or occurrence set forth, or attempted to be set forth, in the original counterclaim relate back to at least June 1. *See* SCRA 1986, 1–015(C). RTC was appointed receiver of American Federal on June 8, 1990, a week after the first filing of the counterclaims.[3] Because § 1821(d)(13)(D) refers only to claims in which either the Federal Deposit Insurance Corporation (FDIC) or RTC has been appointed receiver, it had no effect on subject-matter jurisdiction over the counterclaims at the time they were filed. *See Praxis,* 947 F.2d at 64 n. 14 (discussing stay provisions of § 1821(d), court notes the administrative claims procedure set out in § 1821(d) assists RTC in its capacity as receiver, but not in its capacity as conservator). Clearly, FIRREA did not preclude the court's subject-matter jurisdiction at the time the counterclaims were filed.

*—Once attached, jurisdiction not lost.* We next must determine the effect, if any, RTC's subsequent appointment as receiver has on the jurisdiction of the state court in which the action was filed. Does § 1821(d)(13)(D) divest a state court of jurisdiction that already has attached? Or, once attached, does a state court retain jurisdiction even after RTC has been appointed as receiver? Several federal courts have held that when the FDIC or RTC is appointed receiver, a federal court does not lose jurisdiction over a previously filed lawsuit pending resolution of the administrative claims process. *Marquis v. FDIC,* 965 F.2d 1148, 1153–54 (1st Cir.1992); *Coston v. Gold Coast Graphics, Inc.,* 782 F.Supp. 1532, 1535 (S.D.Fla.1991); *Marc Dev., Inc. v. FDIC,* 771 F.Supp. 1163, 1167–69 (D.Utah 1991); *see also New Maine Nat'l Bank v. Reef,* 765 F.Supp. 763, 765–66 (D.Me.1991) (while agreeing that a court *could* retain jurisdiction, court denied that it *must* do so). While *Marquis, Coston,* and *Marc* address the jurisdiction of federal courts after RTC has been appointed receiver, we find the reasoning equally ap-

**3.** We note that the substitution of RTC as receiver for American Federal as a party in this action was not made until several months later, on September 24, 1990. We need not decide here whether the relevant point in time is RTC's appointment as receiver or the date the receiver becomes a party to the lawsuit.

plicable to the viability of state-court jurisdiction.

*—Alternatives after exhausting administrative claims.* Analysis of RTC's argument begins with the condition set out in Subsection (d)(13)(D) that no court has jurisdiction over the types of claims listed in (d)(13)(D)(i) and (ii) "[e]xcept as otherwise provided in this subsection." We interpret "this subsection" as a reference to Subsection (d) in its entirety. *See Marquis,* 965 F.2d at 1153. Accepting that the counterclaims in this case are included in the type of claims listed in Subsections (d)(13)(D)(i) and (ii), any provision in § 1821(d) allowing jurisdiction overcomes the jurisdictional bar of Subsection (d)(13)(D). As noted above, RTC argues that the only applicable provision in § 1821(d) that would allow jurisdiction over the counterclaims in this case is the provision in Subsection (d)(6) allowing a dissatisfied claimant to pursue in federal court *de novo* review of an initial administrative determination. Subsection 1821(d)(6), however, provides alternative methods for claimants to pursue relief after failing to get a favorable resolution of their claims in the administrative process.

Once an initial administrative determination of a claim has been made, § 1821(d)(6) provides three ways for a dissatisfied claimant to further pursue relief. The claimant can "(1) request an administrative review of the claim; or (2) file suit on the claim in the ... [appropriate federal] district court ...; or (3) continue a judicial action commenced prior to the appointment of a receiver." *Praxis,* 947 F.2d at 63 (interpreting § 1821(d)(6)(A)).[4] Binford and Fritz did file an administrative claim and, at this point in time, have exhausted the administrative claims process.[5] Binford

and Fritz sought to avail themselves only of the third alternative.

*—Continuation of an action.* The third alternative under § 1821(d)(6) is to continue a lawsuit that was commenced before RTC's appointment as receiver. This alternative shows that Congress anticipated that the appointment of the receiver sometimes would occur when a lawsuit already was pending. "The term 'continue' implies that a party is proceeding forward in an ongoing case without an interruption in the court's jurisdiction. A claimant could not 'continue' an action over which the court had been deprived of subject matter jurisdiction." *Marc,* 771 F.Supp. at 1168–69, *quoted with approval in Coston,* 782 F.Supp. at 1535. "[I]f the claimant filed a lawsuit *prior* to the [RTC's] appointment as receiver, the court does not technically lose jurisdiction...." *Coston,* 782 F.Supp. at 1536.

■ Other provisions of § 1821(d) refer to continuing previously filed lawsuits and further indicate that a court which has asserted subject-matter jurisdiction over an action does not lose that jurisdiction when RTC is appointed receiver. Subsections 1821(d)(5)(F)(ii) and 1821(d)(8)(E)(ii), each titled "Legal effect of filing * * * No prejudice to other actions," provide in identical language that "the filing of a claim with the receiver shall not prejudice any right of the claimant to continue any action which was filed before the appointment of the receiver." These guarantees have been read to "contemplate a duality of remedies available to the claimant that has a lawsuit existing when [RTC] is appointed as receiver." *Marc,* 771 F.Supp. at 1168. The clear language of §§ 1821(d)(5)(F)(ii) and 1821(d)(8)(E)(ii) refers to "any action which

---

4. After the RTC denies a claim or fails to render a decision within the requisite time period, § 1821(d)(6)(A) provides: "the claimant may request administrative review of the claim in accordance with subparagraph (A) or (B) of paragraph (7) or file suit on such claim (or continue an action commenced before the appointment of the receiver) in the district or territorial court of the United States for the district within which the depository institution's principal place of business is located or the United States District Court for the District of Columbia (and such

court shall have jurisdiction to hear such claim)."

5. RTC admits that Binford and Fritz have exhausted the administrative claims process. The parties have submitted to this Court a letter dated April 24, 1991, in which RTC denies the claims of Binford and Fritz. The letter was not before the district court. The denial occurred after the dismissal of the counterclaims and was not decided on the merits, but because of "pending litigation."

was filed before the appointment of the receiver," and does not restrict continuations to lawsuits filed in federal court.[6] Congress did not intend to void judicial power over claims against RTC that were brought before the appointment of RTC as receiver. Any other reading would render superfluous the "continue an action" language located in several provisions of § 1821(d). *See Marc,* 771 F.Supp. at 1168 (reading § 1821(d) to preclude the continuance of a lawsuit filed before RTC appointed as receiver would render § 1821(d)(5)(F)(ii) meaningless).

*—Statutory directives reconciled as a whole.* In construing § 1821(d), we must consider the statute as a whole, and we must apply the statute in a manner that gives meaning to each subsection and does not render any other subsection meaningless. *See Marc,* 771 F.Supp. at 1165. RTC's construction of § 1821(d) leads to an absurdity. As the court in *Marquis* observed:

> The single sentence which is most difficult to harmonize with the FDIC's reading of the statute is the provision which states that, subject to the 90–day stay described elsewhere in the statute, "the filing of a claim with the receiver shall not prejudice any right of the claimant to continue *any* action which was filed before the appointment of a receiver." What could be more prejudicial to a claimant's right "to continue" a pending action than the outright dismissal of the action?

*Marquis,* 965 F.2d at 1152–53 (citations omitted) (emphasis added).

The various subsections of § 1821(d) discussed, (13)(D), (5)(F)(ii), (6), and (8)(E)(ii), are easily "reconciled by treating § 1821(d)(13)(D) as expressing Congress' intention to insulate [RTC's] administrative review process from judicial review *in all cases* until the administrative review process is completed. Section 1821(d)(13)(D)'s effect on *jurisdiction,* however, would depend on whether an action was filed before

or after the [RTC's] appointment as receiver." *Coston,* 782 F.Supp. at 1535; *accord Praxis,* 947 F.2d at 63 n. 14 (when action is filed before the institution is placed in receivership, court is not divested of jurisdiction).

The primary focus of the jurisdiction limit can be gleaned from the title of the paragraph. Congress entitled the paragraph "Limitation on judicial review." 12 U.S.C. § 1821(d)(13)(D). * * * Congress intended paragraph (d)(13)(D) to emphasize that the statute insulates FDIC [or RTC] from judicial review of its actions as either receiver or administrative claims processor. * * *

The jurisdiction limit does not, however, apply to every lawsuit in which FDIC [or RTC] is a party as a receiver.

*Marc,* 771 F.Supp. at 1167.

■ In reviewing § 1821(d) as a whole, we find that § 1821(d)(13)(D) does not divest state courts of jurisdiction over claims filed before the appointment of RTC as receiver. The jurisdiction that existed before the appointment of the receiver exists during the pendency of any administrative claims procedure and remains after the administrative claims procedure has been exhausted. A claimant who filed claims against the failed institution or RTC in a lawsuit before the appointment of the receiver and who subsequently complied to no avail with the administrative claims procedures of § 1821(d) has options other than filing a new lawsuit in federal court. That claimant can continue the previously filed lawsuit, and we see nothing in § 1821(d) that explicitly or implicitly restricts the freedom to continue a lawsuit to those that were pending in federal courts at the time of the receiver's appointment.

*—Expeditious and fair resolution.* Generally, one of the main purposes of requiring exhaustion of administrative remedies is to prevent "the government from being surprised by claims it has not had time to consider administratively." *Frederick v. United States,* 386 F.2d 481, 489

---

6. Reference to the continuation of an action commenced before the appointment of RTC as receiver also appears at § 1821(d)(8)(C) (claim-

ants denied relief under expedited claims process may "continue a suit filed before the appointment of the receiver").

(5th Cir.1967). Since the administrative claims process has been exhausted in this case, there is no chance that the counterclaims asserted by Binford and Fritz will surprise RTC. Moreover, in FIRREA Congress provided RTC with other types of protection for those times when it would find itself, upon its appointment as receiver, in the middle of a pending lawsuit. Chief among these is the ninety-day stay provision found at § 1821(d)(12)(A).[7] Congress did not intend that the receiver could assert a claim in state court and at the same time prevent the assertion of claims against it in that same court after the administrative claims process failed to resolve those claims. Congress clearly intended to encourage resolution of claims "expeditiously and fairly" in the administrative process it set out in § 1821(d). *Praxis*, 947 F.2d at 64 (quoting H.R.Rep. No. 54(I), 101st Cong., 1st Sess. 1, at 419, *reprinted in* 1989 U.S.C.C.A.N. 86, 215). Denying Binford and Fritz the opportunity to pursue their counterclaims in this action would be neither expeditious nor fair. *See Marc*, 771 F.Supp. at 1165 (stating that court is not bound by the plain meaning of statute if it would thwart the obvious purpose of the statute). There is no reason the district court cannot hear the counterclaims asserted by Binford and Fritz.[8] As a result of the foregoing, we hold that the state court in this case never lost the subject-matter jurisdiction which attached to the counterclaims when they were filed.

■ *Issue II: Leaseholds as the subject of notice of lis pendens.* The filing of a notice of lis pendens is authorized only in actions "affecting the title to real estate in this state." NMSA 1978, § 38–1–14 (Repl.Pamp.1987). Binford and Fritz dispute the trial court's conclusion that "although a leasehold in real estate is personal property, nonetheless leaseholds are encompassed by the New Mexico real estate conveyancing statutes and are properly subject to mortgages, and [RTC] may prosecute this lawsuit as though it were a foreclosure on a real estate mortgage." Binford and Fritz take the position that leaseholds were not encompassed by the applicable conveyancing statute defining real estate. *See* NMSA 1978, § 47–1–1 (Orig. Pamp.) (statute applicable at time lawsuit filed). It was not until 1991 N.M.Laws, Chapter 234, Section 3, that the legislature amended Section 47–1–1 to include leaseholds within the definition of "real estate." Prior to that amendment, enacted while this lawsuit was pending, this Court quite clearly had held that a leasehold interest is personal property. *Western Sav. & Loan Ass'n v. CFS Portales Ethanol I, Ltd.*, 107 N.M. 143, 144, 754 P.2d 520, 521 (1988);[9] *State ex rel. Truitt v. District Court*, 44 N.M. 16, 28, 96 P.2d 710, 717 (1939). However, the 1991 amendment specifically provides:

VALIDATION OF PRIOR RECORDINGS OF LEASEHOLDS AND INTERESTS IN LEASEHOLDS.—As used in this section "leasehold" means an estate in real estate or real property held under a lease. *Any actions taken prior to the effective date of this section to file or record leases, memoranda, assignments or amendments thereto, leasehold mortgages or other writings affecting leaseholds or any interests in leaseholds in accordance with legal requirements for the filing or recording of*

---

7. Some courts also have found an implied stay provision in § 1821(d). *See Praxis*, 947 F.2d at 63 n. 14 (citing cases). *But see Marc*, 771 F.Supp. at 1167 (refusing to find implied 180–day stay).

8. The questions reached by the courts in *Marc* and *Coston, i.e.,* whether the lawsuit may continue simultaneously during the pendency of the administrative claims process, or whether the RTC is entitled to a stay of the judicial proceeding during the pendency of the administrative claims process, are not relevant to this case since the administrative process is complete.

9. In *Western Savings & Loan,* the Court held, in part, that leaseholds, as personal property, were not subject to redemption in a foreclosure proceeding. By the 1991 amendment, the legislature also enacted § 39–5–1.2 to add leaseholds to the definition of real estate for purposes of the redemption statutes, §§ 39–5–18 to –23 (Repl.Pamp.1991), thus statutorily overruling that part of *Western Savings.* 1991 N.M.Laws, ch. 234, § 2.

*writings affecting the title to real estate or real property are validated as correct and legally effective filings or recordings to give constructive notice.*

1991 N.M.Laws, Chapter 234, § 4 (emphasis added). Because the legislature retroactively has validated the filing of interests in leaseholds for giving of constructive notice, and a notice of lis pendens here acts merely as constructive notice to third persons of a fact open to public notoriety, we recognize the validity of the notice of lis pendens. This act of the legislature affects neither the right nor the remedy of either party, nor has it changed the rules of procedure in contravention of Article IV, Section 34 of the New Mexico Constitution. *See, e.g., Heron v. Gaylor,* 53 N.M. 44, 49, 201 P.2d 366, 369 (1948) ("procedure" embraces pleadings, evidence, and practice constituting the machinery for carrying on the suit).

■ *Issue III: RTC may proceed as though it were seeking to foreclose on real property.* Binford and Fritz concede that if leaseholds are included in the definition of real estate for purposes of the conveyancing statutes, a foreclosure on a lease may follow the same procedures as a foreclosure on real property. The relevant statute now says:

> The term "real estate", as used in [the conveyancing statutes], shall be so construed as to be applicable to lands, tenements and hereditaments, including all real movable property *and leaseholds. As used in this section "leasehold" means an estate in real estate or real property held under a lease.*

NMSA 1978, § 47–1–1 (Repl.Pamp.1991) (emphasis added). The italicized portion of the statute was added by legislative amendment in 1991 N.M.Laws, Chapter 234, Section 3. In this regard, the parties agree that because this case was instituted before the effective date of the amendment, the amendment is not applicable to their rights and remedies.

■ Binford and Fritz argue that, rather than pursuing this action as a foreclosure on real estate, RTC should be required to follow the procedures of Article 9 of the

New Mexico Uniform Commercial Code, NMSA 1978, §§ 55–1–101 to 55–9–507 (Repl.Pamp.1987 & Cum.Supp.1992) (UCC). In a recent case, we determined that the assignment of an interest in a real estate contract was not subject to Article 9 of the UCC. *Reardon v. Alsup (In re Anthony),* 114 N.M. 95, 98, 835 P.2d 811, 814 (1992). We recognized in *Reardon* that, although a real estate contract is personal property, it conveys an interest in land. *Id.* The same section of the UCC that excludes real estate contracts from Article 9 also excludes leases. *See* NMSA 1978, 55–9–104(j) (Cum. Supp.1992) ("Chapter 55, Article 9 NMSA 1978 does not apply to the creation or transfer of an interest in or lien on real estate, including a lease or rents thereunder."). *Accord In re Taslis,* 41 B.R. 47, 50 (Bankr.D.Mass.1984) (holding, under Massachusetts law, enforcement of a collateral assignment of lease exempted from Article 9 of the UCC because the assignment is a transfer of an interest in real estate); *Hilst v. Bennett,* 175 Colo. 78, 485 P.2d 880, 882 (1971) (en banc) (leaseholds excluded from Article 9); *IAMA Corp. v. Wham,* 99 Nev. 730, 669 P.2d 1076, 1079 (1983) (same); *Riley State Bank v. Spillman,* 242 Kan. 696, 750 P.2d 1024, 1029 (Kan.1988) (same). Clearly, RTC is not relegated to the UCC for its remedy.

■ Binford and Fritz argue that the rules of statutory construction dictate that we should presume that the legislature, by the 1991 amendment to Section 47–1–1, intended to change existing law. *See State v. Cotton,* 109 N.M. 769, 772, 790 P.2d 1050, 1053 (Ct.App.) (by amending a statute, legislature is presumed to have changed the law as it previously existed), *cert. denied,* 109 N.M. 751, 790 P.2d 1032 (1990). However, the existing law was unclear when the legislature amended the statute. We prefer to indulge the presumption that the legislature was aware that the law was not clear, and we interpret the amendment as a clarification of existing law. *See Boone v. State,* 105 N.M. 223, 225–26, 731 P.2d 366, 368–69 (1987) (interpreting amendment of Motor

Vehicle Code as rectifying inconsistency rather than changing law).

■ Although it is clear that this foreclosure is not governed by Article 9, we must still determine whether leaseholds are encompassed by the definition of real estate for purposes of the conveyancing statutes. As leaseholds are clearly not lands, tenements, or hereditaments, if they are included in the statute it must be as "real movable property." It is true, as Binford and Fritz argue, that New Mexico courts have always held that leaseholds are personal property; yet we have also noted that a leasehold is an interest in land. *E.g.*, *Truitt*, 44 N.M. at 27–28, 96 P.2d at 717 (leasehold for a term of years is personal property, notwithstanding that it is an interest in land); *Western Sav.*, 107 N.M. at 144, 754 P.2d at 521 (same). As we said in *Yrisarri v. Wallis*, 76 N.M. 776, 779, 418 P.2d 852, 854 (1966), "While the lease is personalty, the leasehold estate is an interest in land." The fact that leaseholds are personal property, however, does not mean that they cannot be encompassed by the definition of "real estate" for the limited purposes of the conveyancing statutes.

Binford and Fritz argue that, before the 1991 amendment, leaseholds were not encompassed by Section 47–1–1, which, in its original enactment, was evidently copied from a Missouri statute. *Truitt*, 44 N.M. at 30, 96 P.2d at 719. The Missouri statute included within the definition of real estate "lands, tenements, and hereditaments, and ... all chattels real." *Id.* (quoting *Orchard v. Wright–Dalton–Bell–Anchor Store Co.*, 225 Mo. 414, 125 S.W. 486 (1909)). "Chattels real" were defined as including estates for years, at will, by sufferance, and various interests of uncertain duration—leaseholds. *Id.* It is not clear why the original New Mexico statute used the phrase "all real movable property" rather than "chattels real."

■ *Truitt* was an action to reform a lease. The issue addressed by the Court was whether jurisdiction was in rem or in personam. The Court quoted at length from *Orchard*, which interpreted the equivalent Missouri statute. Among the portions quoted was an explanation that a freehold, which is real property, is distinguishable from mere movables, which are personal property that do not concern the land, and from chattels real, which are personal property that do concern the land. *Truitt*, 44 N.M. at 30, 96 P.2d at 719 (quoting *Orchard*). This explanation implies that "real movables," as used in the New Mexico statute, are equivalent to "chattels real"; for, as movables, "real movables" must be some form of movable personal property, and inclusion of the word "real" implies that the property concerns the land. We do not believe that the legislature, in enacting Section 47–1–1, intended to create a new category of property; rather, we believe that it intended for "real movable property" to have substantially the same meaning as "chattels real."

■ Property can only be divided into a certain number of categories: real property, personal property, or some combination of the two. It seems logical to presume that the phrase "real movable property," in the context of a statute governing the conveyance of real property, includes property such as leaseholds, which are interests in land. *See Garrison Gen. Tire Serv., Inc. v. Montgomery*, 75 N.M. 321, 324, 404 P.2d 143, 145 (1965) (stating that *Truitt* interpreted the predecessor to Section 47–1–1 as bringing leaseholds within the compass of the conveyancing statutes but does not change the nature of leaseholds as personal property). Due to the hybrid nature of leaseholds, the issue is not whether a leasehold interest is real or personal property in the abstract, but whether it is real or personal property for the issue at hand. 1C Peter F. Coogan et al., *Secured Transactions Under the Uniform Commercial Code* § 16C.03[4] at p. 16C–15 (*Benders U.C.C. Serv.* (1992)) (explaining *Ingram v. Ingram*, 214 Kan. 415, 521 P.2d 254 (1974) (holding leaseholds not encompassed by Kansas version of Article 9)). The hybrid nature of leaseholds necessitates that they be conveyable in the same manner as real estate, notwithstanding the fact that a leasehold is personal property.

The *Truitt* Court quoted further from *Orchard* for the proposition that the inclusion of chattels real in the Missouri conveyancing statutes did not convert what was personal property at common law into real property, but merely brought leaseholds into the real estate conveyancing statutes so that they could be conveyed by "a quitclaim or a warranty deed or mortgage, just as any other interest in land." 44 N.M. at 30, 96 P.2d at 719. At least one commentator has suggested that replacing "all real movable property" with "chattels real" in Section 47–1–1 would not change the substantive meaning of the New Mexico statute. Verle R. Seed, *Toward Clarification of New Mexico's Real Property Statutes*, 1 Nat. Resources. J. 163, 163–164 (1961) (suggesting changes to New Mexico property statutes to clarify their meaning); *see also* Michael G. Sutin, *May a Leasehold Estate Be Mortgaged in New Mexico?*, 2 N.M. Real Est.L.Rep. (Butterworth Legal Publishers) 41, 43 (Jan.1989) (approving the change suggested by Professor Seed and explaining *Truitt*).

We are persuaded that the phrase "real movable property" means substantially the same thing as "chattels real," and that the legislature that enacted the original statute intended to encompass leaseholds within the definition of real estate for purposes of the conveyancing statutes. As the quotation in *Truitt* implies, inclusion of leaseholds in Section 47–1–1 merely places leaseholds within the conveyancing statutes and makes conveyances of leaseholds subject to the rules and procedures that pertain to the conveyance of real property, but does not change them from personal into real property. *Truitt*, 44 N.M. at 30, 96 P.2d at 719.

*Conclusion.* In light of the foregoing, we find that the state court has jurisdiction to hear the counterclaims, that the court properly denied the motion to cancel the notice of lis pendens, and that this action may proceed as a foreclosure on real property. We therefore remand this case for further proceedings consistent with this opinion.

IT IS SO ORDERED.

FROST, J., concurs.

MONTGOMERY, J., specially concurs and files opinion.

MONTGOMERY, Justice (specially concurring).

I concur in both the result and the reasoning of Chief Justice Ransom's opinion. I write separately to set forth more clearly the extent of our ruling on the trial court's jurisdiction over appellants' counterclaims.

As I understand the Chief Justice's opinion, we are *not* ruling that the court below has jurisdiction over all claims asserted against the RTC by the defendants' counterclaims. In particular, we are not ruling on whether the Federal Tort Claims Act (FTCA) precludes state court jurisdiction over any of the counterclaims. We are ruling only that the provisions of FIRREA do not divest a state court of jurisdiction to entertain a claim against the RTC, filed before the RTC is appointed receiver, after the RTC has denied the claim administratively.

The Chief Justice's opinion states that we do not reach "uncertified issues" raised by the parties in their briefs. The opinion also states that we are not deciding whether the counterclaims satisfy the elements of claims for recoupment. It is unclear to me whether the district court did or did not rule upon the preclusive effect of the FTCA on state-court jurisdiction when it ruled, as it did, "that the federal courts have exclusive jurisdiction over Defendants' Counterclaim," and that the counterclaim was dismissed for lack of subject-matter jurisdiction. At a hearing on the RTC's motion to dismiss the counterclaims, the court commented: "The biggest problem is the chief federal jurisdiction of continuing the claims against the RTC. And I am persuaded that there is exclusive federal jurisdiction on this counterclaim." This implies that the court became convinced that the provisions of FIRREA relied on by the RTC preempt state-court jurisdiction, and the court never ruled on the applicability or effect of the FTCA on any of the eight counterclaims asserted by the defendants.

I believe that a claim-by-claim analysis is necessary to determine whether the FTCA preempts state-court jurisdiction over any of the defendants' counterclaims. As far as I can tell and as just indicated, the district court did not conduct such an analysis; consequently, it probably is accurate to say that the trial court has not "certified" for interlocutory appeal the issue of the FTCA's applicability to any or all of the counterclaims. The court did begin such an analysis during the hearings on the RTC's motion, but apparently abandoned it when the court became persuaded that FIRREA divests state courts of jurisdiction over claims against the RTC under the circumstances of this case.

On appeal, the RTC maintains that the FTCA provides an alternate basis for the state court's lack of jurisdiction over defendants' fourth, sixth, seventh, and eighth counterclaims. Therefore, we may take it as conceded (putting aside the provisions of FIRREA) that the court has jurisdiction over at least defendants' first and second counterclaims. In the district court, defendants apparently withdrew their third counterclaim; no one mentions this in the briefs on appeal, so the status of the third counterclaim is unclear. The fifth counterclaim sought cancellation of, and possibly money damages for, the RTC's notice of lis pendens; that matter has been disposed of by our ruling that the notice was proper and not subject to cancellation.

There thus remain four counterclaims over which the district court may or may not have jurisdiction, depending on how the FTCA is interpreted and applied. Whether the FTCA precludes state-court jurisdiction over the counterclaims requires resolution of several issues. The first issue is wheth-er the exclusive federal jurisdiction provision of the FTCA (28 U.S.C. § 1346(b) (1988)) applies to *all* claims against the federal government, including counterclaims for recoupment. If it does apply to all claims, it bars state-court jurisdiction over all four of the remaining counterclaims, even if those counterclaims qualify as claims for recoupment.[1]

If § 1346(b) does not apply to counterclaims for recoupment, it is then necessary to analyze each counterclaim to determine whether it is a proper claim in recoupment. If it is, the trial court has jurisdiction over it; if it is not, the court lacks jurisdiction. The parties agree on the tests for determining whether a claim is one for recoupment: It must (1) arise from the same transaction or occurrence as the Government's claim, (2) seek relief of the same kind or nature, and (3) seek an amount not in excess of the Government's claim. The parties, however (and of course), diverge widely as to whether defendants' counterclaims meet these tests, particularly the "same transaction or occurrence" test. Defendants claim that the relevant transaction or occurrence is "the bank's movement towards insolvency," citing *FDIC v. Carter*, 701 F.Supp. 730, 733–34 (C.D.Cal.1987) (quoting *FSLIC v. Williams*, 599 F.Supp. 1184, 1210 (D.Md. 1984)). The RTC asserts that "a recoupment claim must seek to reduce the plaintiff's recovery either because the plaintiff has not complied with some obligation of the contract on which he sues or because he has violated some duty which the law imposes upon him in making or performing that contract," citing, *inter alia, FSLIC v. Burdette*, 696 F.Supp. 1183, 1187 (E.D.Tenn.1988).

---

1. Unfortunately, the parties have provided little guidance on this issue. Defendants cite several cases that support the proposition that the Government, by instituting suit, waives sovereign immunity for counterclaims in recoupment. None of those cases, however, addresses the issue of whether that proposition is an exception to § 1346(b), *i.e.,* whether compulsory counterclaims for recoupment are subject to the exclusive federal jurisdiction provision of the FTCA.

One of the cases cited by defendants, *FDIC v. Carter*, 701 F.Supp. 730 (C.D.Cal.1987), held that 28 U.S.C. § 2680(a) (preserving sovereign immunity for discretionary functions) applies to compulsory counterclaims for recoupment. *Id.* at 734–35. In so holding, the court stated that, while certain procedural requirements of the FTCA do not apply to compulsory counterclaims for recoupment, the substantive requirements of the Act do apply to such claims. *Id.* at 733–35. The court provided a few examples of "procedural" requirements of the Act, but did not discuss whether § 1346(b) would be considered a procedural or a substantive requirement.

**572**

These issues were not ruled on by the district court in dismissing defendants' counterclaims for lack of jurisdiction, so I agree that they are "uncertified" for purposes of this interlocutory appeal. On remand, the court should decide whether § 1346(b) applies to counterclaims for recoupment and, if not, whether any of the counterclaims is a proper claim for recoupment. Any that is proper should be adjudicated; any that is not should be dismissed for lack of jurisdiction.

Another issue complicating the analysis, and highlighting the need for a district court ruling, which (if necessary) can then be reviewed on full briefing and argument, is whether 28 U.S.C. § 2680(a), (h) (1988) precludes jurisdiction over any of the counterclaims. That section, which is part of the FTCA, precludes, *inter alia*, any claims based on the exercise of a discretionary function or an abuse of process or interference with contract rights. The issue, as with § 1346(b), is whether that section applies to counterclaims for recoupment. The trial court has not ruled on the potential applicability of this provision to one or more of the counterclaims.

Still another complicating factor arises from defendants' declaration in their brief in chief that, if this Court rules that the district court has jurisdiction over (presumably one or more of) their counterclaims, they intend to amend their pleading to assert claims for breach of the covenant of good faith and fair dealing, fraud in the inducement, and negligent misrepresentation. If the court allows amendment, these claims also will have to be analyzed to determine their permissibility in light of the FTCA.